775 P.2d 1292

**J.L. MURDOCK, Plaintiff–Appellant,**

v.

**PURE–LIVELY ENERGY 1981–A, LTD. a Texas Limited Partnership, Lively Energy and Development Corporation, Bruce R. Lively, Linda Whitten Lively, Thomas E. Tucker, Larry D. Johnson and Joseph W. Petrov, Defendants,**

**and**

**Conoco, Inc., Defendant–Appellee.**

No. 17817.

Supreme Court of New Mexico.

June 29, 1989.

---

Padilla & Snyder, Ernest L. Padilla, Santa Fe, for appellant.

Atwood, Malone, Mann & Turner, John S. Nelson, Roswell, for appellee.

## OPINION

SCARBOROUGH, Justice.

Plaintiff-appellant, J.L. Murdock (Murdock), filed a lawsuit against defendant-appellee, Conoco, Inc., a Delaware corporation, Pure–Lively Energy 1981–A, Ltd., a Texas limited partnership, and Lively Energy and Development Corporation, a Texas corporation (Lively), and certain named individuals in the Chaves County District Court. In his complaint Murdock alleged he had not been timely paid royalty proceeds from five oil wells operated by Lively and Conoco. Among his claims for relief, Murdock sought interest on the suspended royalty proceeds. The District Court granted summary judgment against Murdock in favor of Conoco and granted summary judgment for Murdock against Lively. The individually named defendants were dismissed as defendants in the action. Murdock appeals the summary judgment entered in favor of Conoco. We affirm.

## FACTS

Conoco owned executive rights to the mineral estate of certain land in Chaves County pursuant to a mineral deed executed and recorded in 1930. Murdock had a perpetual one-eighth royalty interest in the minerals from the same land pursuant to a warranty deed executed and recorded in 1948. Conoco entered into an oil and gas production lease with Lively in 1981 pertaining to a portion of that same land whereby Conoco reserved to itself a one-eighth royalty interest in addition to the one-eighth interest owned by Murdock. Lively as operator drilled four wells (Lively wells) between 1981 and 1983 which have continuously produced oil in paying quantities.

With regard to his one-eighth royalty interest, Murdock executed a division order in favor of Lively pertaining to production from the Lively wells and to proceeds from the sale of such production. The Lively–Murdock division order was effective as of the date of first production runs from the Lively wells.

Lively, as operator of the Lively wells and consistent with the Conoco–Lively lease and the Lively–Murdock division order, sold to Conoco the oil production from the Lively wells. The casinghead gas was sold to a third party who was not a party in the instant lawsuit. Lively executed two Conoco–Lively division orders in favor of Conoco to document the sales arrangement with Conoco. Pursuant to the Conoco–Lively division orders, Conoco was to pay all proceeds from the sale of oil production from the Lively wells to Lively, with the exception of Conoco's one-eighth royalty interest, which it retained. Lively in turn was to distribute the remaining proceeds to the other interest owners, including Murdock. Conoco never entered into any arrangement with Murdock whereby Conoco agreed to pay oil production proceeds from the Lively wells directly to Murdock.

Before Lively paid royalty proceeds from the Lively wells to Murdock, adverse claims to Murdock's interest were made.

Murdock filed a suit in May 1985 to quiet title to his royalty interest. On May 17, 1984, Lively notified Murdock that payment of his royalty proceeds would be suspended and the money deposited in an interest bearing account pending proof of clear title by Murdock. On August 19, 1985, Lively tendered a cashier's check in the amount of $281,549.88 to the First Interstate Bank of Roswell, New Mexico, to be held pending final judgment in Murdock's quiet title suit. In the lawsuit that we now review on appeal, Murdock sought interest from Lively on his royalty proceeds from the first day of production to August 19, 1985. The district court found Murdock was entitled to judgment as a matter of law against Lively and awarded Murdock $91,814.79.

In addition to the four Lively wells, Conoco drilled and operated a well (Conoco well) on the unleased portion of the subject land. Conoco operated the well and purchased all of the oil produced by the well. The casinghead gas was sold to a third party who was not a party in the instant lawsuit. The Conoco well was drilled in 1983 and has continuously produced oil in paying quantities.

Prior to drilling the Conoco well, Conoco notified Murdock that its attorneys refused to approve the title to his one-eighth perpetual royalty interest. Between February 1984 and May 1985, when Murdock filed his quiet title suit, Conoco corresponded with Murdock concerning adverse claims to Murdock's interest. Among other documents, Conoco's attorneys furnished to Murdock's attorneys the title abstracts Conoco's attorneys had examined. By letter dated July 25, 1984, Conoco advised Murdock that the title to his interest was still defective and notified him it was willing to deposit suspended royalty proceeds into the registry of the court. Neither Murdock nor his attorneys requested Conoco to release such proceeds to the court.

In August 1985, Murdock sent to Conoco copies of various stipulations and a partial summary judgment order in the quiet title suit. Conoco's attorneys in a supplemental

title opinion dated September 9, 1985, approved the release of one-half of the proceeds attributable to Murdock's interest. Conoco prepared a division order pertaining to the proceeds from the beginning of production and sent it to Murdock for execution. Murdock returned the executed division order to Conoco with an unauthorized change. This change consisted of marking out "without interest" from the paragraph of the division order authorizing Conoco to withhold payment of royalty proceeds without interest until any adverse claims to title were settled.

By letter dated September 23, 1985, Murdock's attorneys sent to Conoco a copy of a summary judgment order in Murdock's favor in his quiet title suit. The defendants in Murdock's quiet title suit did not appeal the summary judgment; subsequently, Conoco's attorneys prepared another supplemental title opinion dated October 29, 1985, approving the release of all proceeds attributable to Murdock's royalty interest. In December 1985, Conoco paid Murdock $14,-739.82, the proceeds attributable to the first one-half of Murdock's interest released for payment by the supplemental title opinion of September 9, 1985. On December 6, 1985, Conoco sent Murdock an amended division order, the second of the Conoco–Murdock division orders. The amended division order covered Murdock's entire royalty interest that had been released for payment by Conoco's title attorneys in the October 29, 1985, supplemental title opinion. The amended division order restored the unauthorized deletion which Murdock made in the first Conoco–Murdock division order and provided that Conoco could withhold royalty payments without interest. Murdock executed the amended division order and returned it with no changes on January 31, 1986. In March 1986, Conoco paid Murdock $14,-739.82, all the remaining proceeds attributable to his one-eighth royalty interest in the Conoco well. On July 14, 1986, Murdock filed the lawsuit which is before us on appeal, seeking, among other claims for relief, interest from Conoco on his suspended royalty proceeds from the Lively and Conoco wells.

ISSUES

■ Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1–056(C); *Westgate Families v. County Clerk of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983). The material facts in this case are not disputed. On appeal Murdock asks whether as a matter of law he was entitled to interest from Conoco on: (1) royalty proceeds held in suspense by Lively on the Lively wells, and (2) royalty proceeds held in suspense by Conoco on the Conoco well.

In his complaint, Murdock's sole legal theory for recovery of interest from Conoco was NMSA 1978, Section 56–8–3(B) (Cum.Supp.1985). Section 56–8–3(B) provides that the rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent "on money received to the use of another and retained without the owner's consent express or implied." On appeal Murdock continues an argument he made at the summary judgment hearing in district court for an "equitable application" of Section 56–8–3(B). We are not persuaded by Murdock's argument.

■ Section 56–8–3(B) does not create a liability for interest if the retention of a payable obligation is proper. Both Conoco–Murdock division orders contained a clause permitting the withholding of royalty payments to Murdock without interest if there were a question about Murdock's title. When an express provision of a contract stipulates that a payable obligation is to bear no interest, there can be no implied contract to pay interest under Section 56–8–3. *City of Clovis v. Southwestern Pub. Serv. Co.*, 49 N.M. 270, 161 P.2d 878 (1945).

■ Murdock argues on appeal that Conoco had a fiduciary duty to him similar to that owed by a trustee. We decline to

impose such a standard of conduct on an executive right holder. Instead, we find that an executive right holder owes a duty of utmost good faith to a royalty holder. *See Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984). Sometimes called the "ordinary prudent landowner test," the standard for utmost good faith or utmost fair dealing requires more concern than ordinary good faith for the interests of royalty owners. Unlike a fiduciary obligation, however, the standard of utmost good faith does not require the holder of the executive right to subordinate his interest to those of the royalty owners. Smith, *Implications of a Fiduciary Standard of Conduct for the Holder of the Executive Right*, 64 Tex. L.Rev. 371, 372–3 (1985); *see also* Smith, *The Standard of Conduct Owed by Executive Right Holders and Operators to the Owners of Nonparticipating and Non-operating Interests*, 32 Inst. on Oil & Gas L. & Tax'n 241–66 (1981).

We further find that an "equitable application" of Section 56–8–3(B) as argued by Murdock cannot be sustained because of the unique attributes of a division order. A division order is a specialized contract developed for the petroleum industry that provides authorization to a purchaser of oil and gas to pay proceeds from production to the owners of production. The function of a division order is to protect a purchaser as distributor of funds against potential liability for improper payment, which could include tort liability for conversion. *See* R. Hemingway, *The Law of Oil & Gas* § 7.5(A) (2d ed. 1983). To avoid potential liability, a purchaser typically requires each person who is entitled to a royalty share in the production proceeds to execute a division order that declares the portion of production to which he is entitled. *Id.; see also* Holliman, *Division Orders—A Primer*, 34 Inst. on Oil & Gas L. & Tax'n 313–30 (1983); W. Summers, 3A, *The Law of Oil & Gas* § 590, at 135–37 (1958).

### Lively–Conoco Division Order

█ Conoco utilized two different methods of purchasing production and paying proceeds from the Lively and Conoco wells. Under the first method Conoco disbursed production proceeds to Lively, the operator of the Lively wells, a practice that is common and widely accepted in the petroleum industry. *See* Holliman, *Division Orders—A Primer*, 34 Inst. on Oil & Gas L. & Tax'n, at 349–50 (1983). Lively in turn disbursed the proceeds to the various royalty owners. Before disbursing proceeds Lively obtained division orders in its favor from each royalty owner, including Murdock. By the terms of the Lively–Murdock division order, Lively was Murdock's agent to sell Murdock's royalty production and to remit proceeds to Murdock. Lively also executed a Conoco–Lively division order in favor of Conoco in which Lively agreed to pay production proceeds from the Lively wells to the various royalty owners, including Murdock. In regard to the Lively wells, Conoco did not enter into a contractual relationship with Murdock. Conoco paid all proceeds from the Lively wells to Lively. Lively, not Conoco, suspended payment to Murdock because of questions about the title to Murdock's royalty interest. Therefore, Conoco is not responsible to pay interest on the suspended royalties.

### Murdock–Conoco Division Order

█ Under the second method for purchasing production, Conoco dealt directly with Murdock with respect to the Conoco well. Murdock had the burden to prove he had good title to his royalty interest. A seller of production is required to furnish a satisfactory title abstract or other evidence of title to a purchaser. *See* Bounds, *Division Orders*, 5 Inst. on Oil & Gas L. & Tax'n 91, 94 (1954). The purchaser's attorneys then review the title abstract or other evidence of title furnished by the seller. Failure by a seller to furnish evidence of title, or any dispute or questions concerning title to the land or to the oil produced therefrom, can authorize a purchaser under the terms of a division order to withhold proceeds of all oil received and run, typically without interest, until the dispute, defect, or question of title is corrected or removed. A clause is included in the typical division order that effectively frees a purchaser from any claim for interest from a seller on payments withheld until a satisfactory title determination is made. *See* H.

Williams & C. Meyers, 4 *Oil and Gas Law* § 704.8 (1988). Both Conoco–Murdock division orders contained a clause which stated:

> If any claim is made which in your opinion adversely affects title to any interest credited hereunder, or such title is not satisfactory to you, the parties credited with such interest severally agree to furnish abstracts or other evidence of title acceptable to you. In the event of failure to furnish such evidence of title, you are authorized to withhold payments accruing to such interest, *without interest*, until the claim in settled. [Emphasis added]

The "without interest" clause in the Murdock–Conoco division orders contains standardized language typically included in division orders.[1] In common law jurisdictions this clause in a division order coupled with failure by a seller to comply with its terms upon demand usually relieves the purchaser of any duty to pay interest on sums withheld by purchaser. *See* Holliman, *Division Orders—A Primer*, 34 Inst. on Oil & Gas L. & Tax'n, at 330 (1983); *but cf.* Louisiana Mineral Code, La.Rev.Stat. §§ 31:123 and 31:210–31:212 (West 1989) (when payment of production proceeds is delayed pending proof of clear title, interest must be paid on all monies held for more than thirty days).

We conclude that under the terms of the division order Murdock signed and returned to Conoco on January 31, 1986, Conoco did not owe Murdock interest on proceeds withheld pending resolution of the title dispute. We note, however, that even if the division order had not specifically provided that Conoco did not owe interest, under the common law some courts hold interest would not be owed. The leading Texas opinion on this subject held:

> [T]he purchase price of the royalty oil under the division order is not due and payable until the disputes as to ownership have been settled.... The purchase price of the oil ... not being due and payable until the adverse claim was extinguished forces the conclusion that the [sellers] are not entitled to collect interest until the trial court's judgment was entered in this case which settled and extinguished the dispute as to the adverse claim....

*Gulf Pipe Line Co. v. Nearen,* 135 Tex. 50, 56, 138 S.W.2d 1065, 1068 (Comm. of Appeals Tex.1940) (adopted by the Texas Supreme Court).

The New Mexico legislature has addressed the issue of oil proceeds payments, including interest on late payments, in the Oil and Gas Proceeds Payment Act. NMSA 1978, §§ 70–10–1 et seq. (Repl. Pamp.1987). Enacted after the relevant events in the instant case, the Act shows the legislative intent to adopt the common law approach to division orders set forth in *Gulf Pipe Line Co. v. Nearen.* The Act provides in its "Application" section that the interest permitted on late payments of proceeds does not apply when the payor believes in good faith that there is lack of a good and marketable title held by payee.[2]

The order of the district court giving summary judgment to Conoco is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.

---

1. A sample division order provided in H. Williams & C. Meyers, 7 *Oil & Gas Law* § 701.1 (1988) reads in pertinent part: "In the event of a failure so to furnish such evidence of title, or in the event of an adverse claim, question or dispute at any time concerning the title to such oil or any part thereof or to the land from which such oil is produced, you may hold the proceeds of all oil received and run, to the extent of the interest involved in such adverse claim, question or dispute, *without interest....*" [Emphasis added]

2. NMSA 1978, Section 70–10–5 (Repl.Pamp. 1987) reads in part:

   "The penalty provisions of the Oil and Gas Proceeds Payment Act [70–10–1 to 70–10–5 NMSA 1978] shall not apply in the following instances:

A. the payor fails to make such payment otherwise required hereunder in good faith reliance upon a title opinion by a licensed New Mexico attorney making objection to the lack of good and marketable title of record in the party claiming entitlement to payment and furnishes a copy thereof to such party for curative action required thereby;

B. the payor receives information which in its good faith judgment brings into question the entitlement of the person claiming the right to such payment to receive the same, or which has rendered unmarketable of record the title thereto, or which may expose payor to the risk of multiple liability, or liability to third parties if such payment is made. In such event the payor may suspend such payments otherwise required by the Oil and Gas Proceeds Payment Act or, at the request and expense of the party claiming entitlement or upon the payor's own initiative, may interplead such funds in the manner provided by law in order to resolve such claims and avoid liability under the Oil and Gas Proceeds Payment Act...."