775 P.2d 233

**UNITED WHOLESALE LIQUOR COM-
PANY and Michael J. Chiordi, Plain-
tiffs–Appellants and Cross–Appellees,**

v.

**BROWN–FORMAN DISTILLERS COR-
PORATION, Brown–Forman Beverage
Company, and Quality Import Compa-
ny, Defendants–Appellees and Cross–
Appellants.**

No. 17839.

Supreme Court of New Mexico.

May 17, 1989.

Rehearing Denied July 3, 1989.

James A. Branch, Jr., Albuquerque, for plaintiffs-appellants and cross-appellees.

Kemp, Smith, Duncan & Hammond, John P. Eastham, Celia F. Rankin, Albuquerque, Douglas W. Metz, Washington, D.C., Alice E. Herter, Santa Fe, for amicus curiae Wine & Spirits Wholesalers of America.

Eaves, Darling & Porter, P.A., John T. Porter, Albuquerque, for amicus curiae Quality Import Co.

## OPINION

STOWERS, Justice.

Plaintiffs-appellants, United Wholesale Liquor Company (United) and Michael J. Chiordi, appeal from the judgment of the district court granting summary judgment in favor of defendants-appellees, Brown–Forman Distillers Corporation (Brown–Forman) and Quality Import Company (Quality), on the choice of law provision that Kentucky and not New Mexico law is controlling in this case. Brown–Forman and Quality cross-appeal the trial court's judgment granting partial summary judgment in favor of United on the issue of liability that Brown–Forman's decision to terminate United as its distributor did not constitute "good cause" under the New Mexico Alcohol Beverage Franchise Act (Franchise Act), NMSA 1978, Sections 60–8A–7 to –11 (Repl.Pamp.1987), if New Mexico law is applicable to this dispute. Since we affirm the district court on the choice of law question, we need not decide whether Brown–Forman's termination of United fell within the purview of NMSA 1978, Sections 60–8A–7 and –8.

Brown–Forman, a Delaware corporation with its principle place of business in Louisville, Kentucky, is engaged in the business of producing and supplying certain brands of alcoholic beverages to wholesalers. United, a New Mexico corporation with its principle place of business in Albuquerque, is a wholesaler of alcoholic beverages and is licensed to distribute products to retail outlets in New Mexico. On June 10, 1965, Brown–Forman entered into a distributor contract or franchise agreement with United in which United would distribute certain lines of Brown–Forman's products in northern New Mexico.

In 1983, United was to be sold to Star Corporation. Upon learning of this proposed sale, Brown–Forman entered into another distributor contract with United. In this agreement United's distribution territory was expanded to include the southern part of New Mexico and new lines of Brown–Forman products were specificed therein for distribution. The agreement also stated that Michael Chiordi remain with United as sales manager, that United add more sales staff, construct a new warehouse and increase its fleet of delivery trucks.

In 1986, Brown–Forman concluded that to remain competitive in the marketplace it had to consolidate its brands into one distributor in each state or large geographical area. In order to accomplish this goal,

Brown–Forman requested its three New Mexico wholesale distributors, United, Southwest Distributor and Quality, to make a presentation on their ability to market all Brown–Forman brands in New Mexico. The winner of the presentation was to become the sole distributor for Brown–Forman's entire line of products in New Mexico. After the presentation was held in June of 1987, Brown–Forman concluded that Quality had the most efficient operation and that all brands should be consolidated into that company. In a letter dated December 29, 1987, Brown–Forman informed United of its decision to terminate their franchise agreement, effective December 31, 1988.

As a result of this decision, United filed the present lawsuit alleging, among other things, that Brown–Forman's termination of the 1983 distributor contract was not for good cause and in good faith as required by Section 60–8A–7 and Section 60–8A–8 of the New Mexico Franchise Act. In moving for summary judgment, United argued that it was entitled to judgment as a matter of law on the issue of liability on the grounds that Brown–Forman violated the Franchise Act; that United had an implied-in-fact or quasi contract with Brown–Forman for the distribution of Bols and Garneau products from 1983 to the present; and, that Michael Chiordi had a quasi or constructive contract for the benefit of Brown–Forman. In its opposition motion and cross-motion for summary judgment, Brown–Forman claimed that since the contracts had to be construed by the laws of Kentucky, it had the right to terminate the contracts as it did; that even if New Mexico law applied, the Franchise Act, which was to be applied prospectively, was inapplicable to the Bols and Garneau products; that the termination of the franchise was for good cause and in good faith; and all the remaining claims were invalid. From the judgment of the district court granting summary judgment in favor of Brown–Forman on the conflicts of law issue, and also granting partial summary judgment in favor of United on the issue of its termination by Brown–Forman under New Mexico law, all parties appeal to this court.

The appeal involves the same issues set forth by all parties in their motions for summary judgment. Since we conclude that the dispositive issue in this case is the choice of law question, we need not decide the other issues raised.

The terms of the distributor agreement between Brown–Forman and United are set forth in the written contracts of June 10, 1965, and April 19, 1983. These agreements provide in paragraph eighteen that the contract is to be construed according to the laws of Kentucky. They further provide for a ninety-day written notice to be given by either party to cancel the contract without cause. And in the event the contracts are terminated by Brown–Forman with notice, United is entitled to compensation as set forth in paragraph thirteen.

United claims that the New Mexico Uniform Commercial Code (UCC) provision, NMSA 1978, Section 55–1–105 (Orig.Pamp. and Cum.Supp.1988), is not the proper choice of law rule in the present case. Further, United maintains that enforcement of paragraph eighteen and application of Kentucky law defeats the purpose of the Franchise Act and violates the public policy of New Mexico. Brown–Forman in its cross-appeal argues that the application of Kentucky law respects the parties' choice of law, upholds New Mexico's strong public policy of freedom to contract and is not violative of the Franchise Act. We agree with the position of Brown–Forman.

■ New Mexico adheres to a traditional conflicts of law analysis contained in Restatement (First) of Conflicts of Law (1934). *See Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). Under a traditional conflict of laws approach, the court must first determine under what area of law the dispute arises. *Id.*

■ United argues that a distributor agreement is contractual in nature, and therefore, governed by the laws of contracts. Brown–Forman, on the other hand, argues that distributor contracts are really contracts for sale and governed by Article

2 of the UCC. There are no New Mexico cases on point that state these contracts are within the purview of the UCC. Section 55–2–106(1) of the UCC defines a contract for sale to include both a present sale of goods and a contract to sell goods at a future time and states that a sale consists in the passage of title from the seller to the buyer for a price. A majority of the jurisdictions that have looked at this issue, however, have concluded that a distributor contract is subject to the provisions of the UCC. Annotation, *What Constitutes a Transaction, a Contract for Sale, or a Sale Within the Scope of UCC Article 2*, 4 A.L.R. 4th 85, 101–02 (1981) and cases cited herein; *see also Kirby v. Chrysler Corp.*, 554 F.Supp. 743, 749–50 (D.Md.1982). The purpose of distributorship agreements is to provide a contract for the sale of a product from a manufacturer at wholesale prices that is to be marketed in a specific area by the distributor. *See Warrick Beverage Corp. v. Miller Brewing Co.*, 170 Ind.App. 114, 352 N.E.2d 496 (1976). As such, a distributorship agreement should be subject to the provisions of the UCC.

▪ Having so concluded, we must next determine which provision of the UCC covers the choice of law question. Section 55–1–105(1) of the UCC provides in pertinent part: "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or such other state or nation shall govern their rights and duties." If the parties affirmatively choose their own law, it is limited to jurisdictions to which the transaction bears a "reasonable relation." That means, in general, that the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. *See Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927). In this case all of the goods purchased by United, with the exception of products imported directly to United, are manufactured in Kentucky, bills for the goods are sent from Kentucky, and payments for the goods are sent to Ken-tucky. We can only conclude that the distributor contracts between United and Brown–Forman bear a reasonable relation to the state of Kentucky. The parties can stipulate in their contract which law is to apply so long as the law they choose has a relationship to the contract and this court will abide by that choice of law clause in a contract controlled by the UCC. *See Jim v. CIT Financial Services Corp.*, 87 N.M. 362, 533 P.2d 751 (1975). "The parties here were competent and free to make a choice ... of the law which governs the performance and enforcement of the contractual arrangements which apparently exist between them." *Id.* at 364, 533 P.2d at 753.

▪ Nevertheless, when the choice of law rule leads to the law of another state and that law is different from the law of the forum, the forum may decline to apply the out-of-state law if it offends the public policy of New Mexico. *See Sandoval v. Valdez*, 91 N.M. 705, 707, 580 P.2d 131, 133 (Ct.App.1978). Thus, in this case we will apply Kentucky law unless the application of it would violate New Mexico's public policy.

▪ United argues that the choice of law provision in paragraph eighteen of the contracts violates the public policy of New Mexico. United maintains that Kentucky law as the choice of law precludes application of the New Mexico Franchise Act to the distributor contract and, thus, undermines New Mexico's interest in protecting public health and welfare of its people through regulation of the liquor industry. Further, United claims that two private parties to a contract may not individually or collectively defeat the public policy of this state through the guise of a choice of law provision in a contract. The reason for the enactment of the Franchise Act was "to regulate business practices between alcoholic beverage wholesalers and suppliers, in particular ... to prevent tied houses and similar means of control by suppliers over wholesalers and, indirectly, over retailers." *Southwest Distributing Co. v. Olympia Brewing Co.*, 90 N.M. 502, 509, 565 P.2d 1019, 1026 (1977) (Sosa, J., dissenting). The public policy at issue here is the eco-

nomic bargaining power of the wholesaler and supplier.

New Mexico also has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals. "Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." *City of Artesia v. Carter,* 94 N.M. 311, 314, 610 P.2d 198, 201 (Ct.App.1980). The UCC provision on choice of law is evidence of our strong public policy of freedom to contract. *See also Smith v. Price's Creameries,* 98 N.M. 541, 545, 650 P.2d 825, 829 (1982); *General Elec. Credit Corp. v. Tidenberg,* 78 N.M. 59, 62, 428 P.2d 33, 36 (1967). United exercised its right to choose which law governs the distributor contracts. The public policy behind the Franchise Act, to balance the bargaining power between wholesaler and supplier, should not be allowed to override our strong public policy of freedom to contract. The voluntary relinquishment of a statutory protection is consistent with our policy favoring the right to contract. *City of Artesia,* 94 N.M. at 314, 610 P.2d at 201. Since the contracts bear a reasonable relation to the state of Kentucky and the choice of law provision therein does not violate some fundamental principle of justice, we will apply Kentucky law in interpreting the distributorship contracts.

Under Kentucky law, reasonable notification is the minimum amount of protection afforded to either party upon the termination of a distributorship agreement. *Leibel v. Raynor Mfg. Co.,* 571 S.W.2d 640, 643 (Ky.Ct.App.1978). The application of principles of good faith and sound commercial practice normally require for such notifications of an ongoing contract relationship as will give the other party reasonable time to seek a substitute arrangement and enable the wholesaler to recoup his investment. *Id.* at 643 & 644. Under the contract in the present case, Brown–Forman was required to give United a ninety-day written notice of termination without cause. Brown–Forman complied with this provision. In fact, Brown–Forman gave more than the required notice in the contract. The letter to United discussing the termination of United as distributor for Brown–Forman was dated December 29, 1987, but was not effective until December 31, 1988. This was a reasonable time of notice under the circumstances.

We hold that Kentucky law and not the New Mexico Franchise Act applies to the contracts at issue and that Brown–Forman complied with Kentucky law in terminating United. Since our holding is dispositive of the case, we need not consider any other issue. We note, that for some unexplained reason, the trial court in its disposition of this matter attempted to include an alternative disposition or judgment. This procedure is improper and should be avoided. We affirm that portion of the district court's judgment granting summary judgment in favor of Brown–Forman.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.