**Certiorari Granted, June 13, 2012, No. 33,632**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-064**

**Filing Date: April 24, 2012**

**Docket No. 30,359**

**THE FIRST BAPTIST CHURCH OF ROSWELL,**
**THE HISTORICAL SOCIETY FOR SOUTHEAST**
**NEW MEXICO, INC., and THE ROSWELL**
**WOMAN'S CLUB, INC., Individually and on**
**behalf of a class of similarly situated persons**
**and entities,**

      **Plaintiffs-Appellees,**

**v.**

**YATES PETROLEUM CORP., a New**
**Mexico corporation**,

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Looper Reed & McGraw, P.C.
James J. Ormiston
Houston, TX

Sanders, Bruin, Coll & Worley, P.A.
Kelly Mack Cassels
Roswell, NM

for Appellees

Hinkle, Hensley, Shanor & Martin, L.L.P.
Andrew J. Cloutier
Meagan M. Norris
Roswell, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**    This case requires us to determine whether a contractual agreement to waive interest on proceeds owed to mineral owners of the rights to a well is rendered void by the New Mexico Oil and Gas Proceeds Payment Act (the Act), NMSA 1978, Sections 70-10-1 to -6 (1985, as amended through 1991).  We conclude that the Act does not render such a contract void, and the district court having ruled otherwise, we reverse.

**BACKGROUND**

**{2}**    Defendant is the operator of the "Runnin' AZH Com. No. 1 Well."  Plaintiffs are owners of mineral rights to the well, and contend they are entitled to interest on the proceeds they received from production of the well.  Defendant began production from the well in August 2002, and when proceeds were obtained from production, Defendant retained a title attorney to identify the apparent owners of the mineral rights to the well.  Pursuant to the title opinion, "division orders" were sent to Plaintiffs in May 2003, to be signed and returned.  "A division order is a specialized contract developed for the petroleum industry that provides authorization to a purchaser of oil and gas to pay proceeds from production to the owners of production."  *Murdock v. Pure-Lively Energy 1981-A, Ltd.*, 108 N.M. 575, 579, 775 P.2d 1292, 1296 (1989).  For protection against potential liability for improper payments, "a purchaser typically requires each person who is entitled to a royalty share in the production proceeds to execute a division order that declares the portion of production to which he is entitled."  *Id.*  Another typical feature of a division order is that until a satisfactory title determination is made, no interest is owed on withheld payments.  *Id.* at 579-80, 775 P.2d at 1296-97.

**{3}**    The division orders listed the title requirements to entitle Plaintiffs to proceeds from the well, and specifically requested that each Plaintiff provide a copy of the trust document establishing its right to the interest claimed.  Each Plaintiff executed and returned the division order, and Plaintiffs retained the same attorney among them to assist them in satisfying the title requirements. Defendant accepts substitute or altered division orders from interest holders, but all Plaintiffs in this case signed the division order without making changes.  Plaintiffs' and Defendant's counsel communicated from 2004 through 2006, during which time Plaintiffs provided documents and other materials, but not the requested trust document.  In 2006, despite not being provided a copy of the trust, Defendant placed Plaintiffs on pay status.  Plaintiffs began receiving payments, but since payment had not been made within the time limits of Section 70-10-3 (1985), they also demanded interest on the proceeds under Section 70-10-4 (1991).  Defendant refused to pay interest pursuant to a clause in the division orders signed by Plaintiffs which authorizes payment without interest

2

if the delay in payment results from a question concerning Plaintiffs' marketable title. The clause states:

> If any claim is made which adversely affects title to any interest credited hereunder, or such title is unmarketable in the opinion of a licensed New Mexico attorney, the parties credited with such interest severally agree to furnish abstracts or other evidence of title acceptable to [Defendant], and to cure any defects which render the title of the Interest Owners unmarketable, without expense to [Defendant]. *In the event of failure to furnish such evidence of marketable title, [Defendant] is authorized to withhold payments* without payment of interest *until the claim is settled*.

(Emphasis added.)

**{4}**   Plaintiffs filed a class action in the district court asserting their right to interest on the proceeds notwithstanding the clause in the division order. The district court certified the class and ruled that the agreement in the division order to withhold payment without interest violates Section 70-10-4, and declared the agreement void. Damages were awarded following a non-jury trial, and the district court entered a declaratory judgment requiring Defendant in the future to pay interest on all proceeds paid after the deadlines set forth in Section 70-10-3.

**{5}**   Defendants appeal, contending that Section 70-10-4 does not prohibit the parties from contractually agreeing to forego interest on payments if the delay in payment results from a question concerning the seller's marketable title.

**STANDARD OF REVIEW**

**{6}**   This case turns upon whether the right to interest on the proceeds from production codified in Section 70-10-4 outweighs New Mexico's strong public policy favoring parties' rights to contract. Interpretation of a statute is a question of law which we review de novo. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

**{7}**   "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996), *aff'd in part, rev'd in part on other grounds by* 2000-NMSC-010, 128 N.M. 739, 998 P.2d 575. When presented with a question of statutory construction, we observe the following general principles: (1) the plain language of the statute is the primary indicator of legislative intent; (2) we will not read into a statute language which is not there, particularly if it makes sense as written; and (3) when several sections of a statute are involved, they must be read together so that all parts are given effect. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

3

**HISTORY OF THE ACT**

**{8}** The Oil and Gas Proceeds Payment Act was originally enacted in 1985. 1985 N.M. Laws, ch. 55, §§ 1-5. In general, the Act addresses the timing and procedure required of producers, "payors," for the payment of proceeds from oil and gas productions to interest holders of those minerals. *Id.*

**{9}** Section 70-10-3 (1985) directs when payments must be paid. In pertinent part, payment is owed:

> [C]ommencing not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production unless other periods or arrangements are provided for in a valid contract with the person entitled to such proceeds.

Section 70-10-4, as originally enacted in 1985, provided:

> A. Any delay in determining any person legally entitled to an interest in the proceeds from production shall not affect payments to all other persons entitled to payment. In instances where accrued payments exceed one thousand dollars ($1,000) and cannot be made for any reason within the time limits specified in the Oil and Gas Proceeds Payment Act [70-10-1 to 70-10-5 NMSA 1978], the payor shall deposit all proceeds credited to the eventual oil and gas proceeds owner to an escrow account in a federally insured bank or savings and loan institution in New Mexico, using a standard escrow document form *which deposit shall earn interest* at the highest rate being offered by that institution for the amount and term of such demand deposits. The escrow agent may commingle money received into escrow from any one lessee or operator, purchaser or other party legally responsible for payment. *Payment of principal and accrued interest from such accounts shall be paid by the escrow agent to all persons legally entitled thereto within thirty days from the date of receipt by the escrow agent of final legal determination of entitlement thereto.* Applicable escrow fees shall be deducted from the payments.

> B. Any payor who violates the provisions of this section is liable to the person or persons legally entitled to proceeds from production for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent per annum on the unpaid principal balance from the date payment is due.

> C. The prevailing party in any proceedings brought pursuant to the Oil and Gas Proceeds Payment Act may be entitled to recover all court costs and reasonable attorneys' fees.

§ 70-10-4 (1985) (emphasis added).

**{10}**     Thus, under Subsection (A), when payment was not made within the deadline provided for in Section 70-10-3, the payor was required to deposit the amount owed into a bank or savings and loan institution escrow account, where the funds earned interest "at the highest rate being offered by that institution for the amount and term of such demand deposits." Section 70-10-4. We refer to this as "compensatory interest." In addition, Subsection (A) provided that the escrow agent was the one who paid the principal amount owed, together with the compensatory interest to the person legally entitled to the funds. Subsection (B) then provided that any payor who violated the statute was liable not only for the principal, but also eighteen percent (18%) interest. Herein, we refer to this as "penalty interest."

**{11}**     In *Murdock*, our Supreme Court addressed the enforceability of division orders which contractually waive interest payments. 108 N.M. at 580, 775 P.2d at 1297. *Murdock* involved a payor's refusal to pay interest on proceeds pursuant to a clause in a division order nearly identical to the one at issue in this case. *See id.* at 579-80, 775 P.2d at 1296-97. As a result of questions concerning the payee's title, payment was delayed and the division order provided that under such circumstances, payor was entitled to withhold payments without interest until title to the claim was resolved. *Id.* at 580, 775 P.2d at 1297. The Court held that under the contract set forth in the division order, no interest was owed to the payee. *Id.*

**{12}**     In 1991, two years after *Murdock*, the Legislature amended portions of the Act. 1991 N.M. Laws, ch. 235, §§ 1-4. While the time for payment codified in Section 70-10-3 was not changed, Section 70-10-4 was amended. As amended in 1991, Section 70-10-4 now provides:

>    A.     Any delay in determining any person legally entitled to an interest in the proceeds from production shall not affect payments to all other persons entitled to payments. In instances where payments cannot be made within the time period provided in Section 70-10-3 NMSA 1978, *the payor shall create a suspense account* on his books for such interest or may interplead the suspended funds into court.
>
>    B.     The person entitled to payment from the suspended funds *shall be entitled to interest on the suspended funds from the date payment is due* under Section 70-10-3 NMSA 1978. The interest awarded shall be the discount rate charged by the federal reserve bank of Dallas to member banks plus one and one-half percent on the date payment is due. *Payment of principal and interest on the suspended funds shall be made to all persons legally entitled to the funds* within thirty days from the date that the persons

5

are determined to be entitled to the suspended funds by a final legal determination.

§ 70-10-4 (1991) (emphasis added).

**{13}**    Thus, under the 1991 amendments to the Act, when there is a delay in determining who is entitled to the proceeds which extends beyond the time limit set forth in Section 70-10-3, the payor creates a suspense account on his books instead of depositing the funds into a bank or savings and loan institution escrow account, which the original Act required. Once a final legal determination is made that the payee is entitled to the funds, the payee is entitled to be paid the principal plus statutory interest. In addition, the 1991 amendments moved penalty interest from Section 70-10-4 (1985) to Section 70-10-5 (1991).

**THE DISTRICT COURT DECISION**

**{14}**    The district court first rejected Defendant's argument that because Section 70-10-4 of the 1991 Act uses the phrase, "legally entitled to the funds," that the payor is not obligated to pay interest on funds held in suspense until the title issues are resolved. The district court noted that no such exception is stated in the statute. "Rather, the plain meaning of the statute is that interest accrues on funds held in suspense during the time title questions prevent disbursement. Once title is resolved, both principal and accrued interest are payable."

**{15}**    The district court then addressed the waiver of interest the parties contractually agreed to in the division orders, and concluded:

> Section 70-10-4 establishes a mandatory requirement that payors pay interest on suspended oil and gas accounts. [Section] 70-10-4 is positive law, and [Section] 70-10-4 expresses strong public policy. The provisions of [Section] 70-10-4 are incorporated in the [d]ivision [o]rder here. Any contractual provisions that attempt to delete the mandatory requirement to pay interest as provided in [Section] 70-10-4 are unenforceable as violative of New Mexico public policy.

**{16}**    Defendants argue on appeal that the 1991 amendments to the Act do not reflect a legislative determination which deprives parties of the ability to modify the payment of interest by contractual agreement. We agree.

**ANALYSIS**

**{17}**    We agree with the district court that Section 70-10-4 (1991) plainly states that interest accrues on funds held in suspense during the time title questions prevent disbursement, and once title is resolved, both principal and accrued interest are payable. However, this does not end the inquiry because the entitlement to compensatory interest was

6

phrased in mandatory terms under the 1985 statute, and it is still phrased in mandatory terms under the 1991 amendments.

**{18}** The 1985 statute states that if payment is not made within the time specified under Section 70-10-3 (and the amount owed exceeds $1000), the funds must be deposited into an approved escrow account, "which deposit shall earn interest." Section 70-10-4(A) (1985). Once a final legal determination is made of entitlement, "[p]ayment of principal and accrued interest from such accounts shall be paid" within thirty days. *Id.* Under the 1991 amendments, if payment is not made within the time specified under Section 70-10-3 (there is no longer a requirement that the amount exceed $1000), the payor must create a suspense account. Section 70-10-4(A) (1991). The person who is entitled to payment from the suspended funds "shall be entitled to interest on the suspended funds" and once a final legal determination is made of entitlement, "[p]ayment of principal and interest on the suspended funds shall be made" within thirty days. Section 70-10-4(B) (1991). Thus, it does not appear that the Legislature intended to treat the entitlement to compensatory interest differently under the 1991 amendments.

**{19}** We must therefore address the dispositive question raised in this case: whether the Act renders contractual agreements in division orders to waive compensatory interest void and therefore, unenforceable. We conclude that the Act does not and reverse the district court.

**{20}** "Our case law has repeatedly recognized that New Mexico has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *K.R. Swerdfeger Constr., Inc. v. Bd. of Regents, Univ. of N.M.*, 2006-NMCA-117, ¶ 27, 140 N.M. 374, 142 P.3d 962 (alteration, internal quotation marks, and citation omitted). "Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 108 N.M. 467, 471, 775 P.2d 233, 237 (1989) (internal quotation marks and citation omitted). Thus:

> Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case. It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts, and agreements therefore are not to be held void as being contrary to public policy, unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way.

*Berlangieri v. Running Elk Corp.*, 2002-NMCA-060, ¶ 11, 132 N.M. 332, 48 P.3d 70 (internal quotation marks and citation omitted), *aff'd on other grounds by* 2003-NMSC-024, 134 N.M. 341, 76 P.3d 1098. While we jealously guard the right to contract, "if a

contractual clause clearly contravenes a positive rule of law, it cannot be enforced." *Acacia Mut. Life. Ins. Co. v. Am. Gen. Life Ins. Co.*, 111 N.M. 106, 107, 802 P.2d 11, 12 (1990).

**{21}**     We first look to the plain language of the statute to determine if the Legislature has prohibited contractual agreements to waive the payment of compensatory interest under Section 70-10-4.  *See Tri-State Generation & Transmission Ass'n v. D'Antonio*, 2011-NMCA-015, ¶ 16, 149 N.M. 394, 249 P.3d 932, *cert. granted*, 2011-NMCERT-002, 150 N.M. 617, 264 P.3d 129.  We find nothing in the plain language of Section 70-10-4 which explicitly articulates a fundamental public policy that payment of compensatory interest is deemed to be of such importance, required in the public interest, that its payment cannot be waived.  The lack of explicit language prohibiting contractual rights with the explicit allowance of contractual modification of the date proceeds are owed weighs in favor of a determination that the Legislature did not intend to prevent parties from contracting in this circumstance.  *See K.R. Swerdfeger Constr., Inc.*, 2006-NMCA-117, ¶ 24 (declining to find a strong public policy prohibiting the delegation of a statutory duty based "simply on the absence of language expressly allowing delegation").  Further, the Legislature is capable of directing that specific contracts or contractual provisions violate New Mexico public policy, and did not do so in the Act.  *See* NMSA 1978, §§ 56-7-1(A) (2005), 56-7-2(A) (2003), 56-7-3(A) (2007) (providing that indemnification agreements releasing parties from negligence in specified industries are "void, unenforceable and against the public policy of the state").

**{22}**     We therefore turn to the history and background of the statute while considering the object and purpose the Legislature intended to accomplish under the statute.  *See Tri-State Generation & Transmission Ass'n*, 2010-NMCA-015, ¶ 16.  The Act as originally enacted, and as amended in 1991, states in mandatory terms that the payee is entitled to compensatory interest if payment is not made within the time specified in Section 70-10-3 (1991).  However, this does not, by itself, prevent the parties from contracting to modify that right.  *See United Wholesale Liquor Co.*, 108 N.M. at 471, 775 P.2d at 237 ("The voluntary relinquishment of a statutory protection is consistent with our policy favoring the right to contract.").  In other words, the mere fact that the Legislature enacted or modified a statute providing for a benefit does not establish that the Legislature intended that the policy embedded in the statute will, in all cases, outweigh the parties' right to contractually modify or waive the benefit.  *See Electric Gin Co. v. Firemen's Fund, Ins. Co.*, 39 N.M. 73, 73, 39 P.2d 1024, 1024 (1935) (stating that a contract providing for a twelve-month statute of limitations in a fire insurance policy was not void for violating public policy codified in New Mexico's six-year statute of limitations for suits on written contracts); *K.R. Swerdfeger Constr., Inc.*, 2006-NMCA-117, ¶¶ 2, 26 (concluding that a statute which requires the owner of land containing underground facilities (cable television lines, oil and gas pipelines, and utility lines) to locate and mark on the surface the actual location of the underground facilities does not constitute an explicit statement of fundamental policy such that parties cannot delegate by contract the duties imposed by the statute); *In re Tulsa Energy, Inc.*, 111 F.3d 88, 91 (10th Cir. 1997) (concluding that the waiver of compensatory interest under a division order was not against the public policy of Oklahoma because compensatory interest

compensates for the use of money, but a waiver of penalty interest does violate Oklahoma public policy because its purpose is to compel compliance with the statute).

**{23}** Importantly, when the Act was originally passed in 1985, the Legislature specifically granted a contractual right to alter the date payment is due in Section 70-10-3 (1985), and Section 70-10-3 was not altered by the 1991 amendments to the Act. Section 70-10-3 specifies when payment is to be made, "unless other periods or arrangements are provided for in a valid contract with the person entitled to such proceeds." *Id.* As Defendants point out, the date from which compensatory interest accrues under Section 70-10-4 is directly determined by the date the proceeds are owed under Section 70-10-3. By granting the parties freedom to contractually change the date when proceeds are owed under Section 70-10-3, they are also granted freedom to determine when compensatory interest commences under Section 70-10-4. Allowing the parties to contractually agree whether compensatory interest will be paid pursuant to Section 70-10-4, as the parties did in this case, is consistent with allowing the parties to contractually agree when payment is due under Section 70-10-3. *See Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453 ("[T]wo statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals." (internal quotation marks and citation omitted)); *Quantum Corp. v. State Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (stating that the statute or statutes whose construction is in question are to "be read in connection with other statutes concerning the same subject matter").

**{24}** Further, when the Legislature amended the Act in 1991, it did not enact language prohibiting contractual agreements in division orders from waiving compensatory interest while a title question is being resolved. Moreover, *Murdock* expressly held in 1989 that contractual agreements to waive compensatory interest during a title dispute are valid and enforceable. *Murdock*, 108 N.M. at 579-80, 775 P.2d at 1296-97. *Murdock*'s holding was in no way addressed or changed by the Legislature in the 1991 amendments. We may therefore properly conclude that the Legislature did not intend the 1991 amendments to modify or conflict with *Murdock*'s holding. *See Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153 ("[W]e presume the legislature was well informed about the existing common law before the statute was enacted and did not intend to enact a statute that conflicted with the common law. This rule of construction is a recognition that any law is passed against the background of all the law in effect at the time. If no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation." (citation omitted)).

**{25}** Finally, we do not perceive that allowing the parties to contractually waive compensatory interest in the division order "manifestly tend[s] to injure the public." *See Berlangieri*, 2002-NMCA-060, ¶ 11. On the contrary, the parties are entitled to agree when payments will be made under Section 70-10-3. Here, the parties contractually agreed in the division orders that when there is a good faith question of title, the interest holder agrees to provide the payor with abstracts or other evidence of title acceptable to the payor and to cure

9

any defects which render the title unmarketable.  Consistent with their right under Section 70-10-3, the parties also contractually agreed that "[i]n the event of failure [of the interest holder] to furnish such evidence of marketable title, [the payor] is authorized to withhold payments without payment of interest until the claim is settled."  Thus, the failure to accrue compensatory interest is attributable to the interest holder's delay in proving marketable title, and not any action of the payor.

**{26}**    Consistent with the foregoing, we hold that the contractual waiver of compensatory interest contained in the division orders in this case does not violate New Mexico public policy and is enforceable.  In light of this disposition, it is not necessary for us to address other issues raised by Defendant.

**CONCLUSION**

**{27}**    The order of the district court is reversed, and the case is remanded for further proceedings consistent with this Opinion.

**{28}    IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Class Actions

**CONTRACTS**
Contracts, General

**NATURAL RESOURCES**
Oil and Gas
Royalties

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction