IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 15, 2014

Docket No. 33,632

THE FIRST BAPTIST CHURCH
OF ROSWELL, THE HISTORICAL
SOCIETY FOR SOUTHEAST NEW
MEXICO, INC., and THE ROSWELL
WOMAN'S CLUB, INC., individually
and on behalf of a class of similarly
situated persons and entities,

       Plaintiffs-Petitioners,

v.

YATES PETROLEUM CORP.,
a New Mexico corporation,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Charles C. Currier, District Judge

Sanders, Bruin, Coll & Worley, P.A.
Kelly Mack Cassels
Roswell, NM

Looper, Reed & McGraw, P.C.
James J. Ormiston
Houston, TX

for Petitioners

Hinkle, Hensley, Shanor & Martin, L.L.P.
Andrew J. Cloutier
Parker B. Folse
Roswell, NM

for Respondent

A. Blair Dunn
Albuquerque, NM

Deborah J. La Fetra
Sacramento, CA

for Amicus Curiae Pacific Legal Foundation

**OPINION**

**VIGIL, Chief Justice.**

**{1}** This case presents the issue of whether payees who are entitled to interest on suspended oil and gas royalty payments can contract away their statutorily mandated interest payments. The district court awarded interest payments from Defendant Yates Petroleum Company (Yates) to Petitioners on the basis that NMSA 1978, Section 70-10-4 (1991) mandates that payees be paid interest on funds to which they are entitled. The district court found that this provision of Yates' form division order was unenforceable because it contravened Section 70-10-4, and therefore Yates owed the interest to Petitioners. Yates appealed this decision and the Court of Appeals reversed, holding that the parties could contract around the provisions of the statute. *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 23, 281 P.3d 1235. Yates argues that Petitioners are not entitled to interest on the funds pursuant to a provision in Yates' standard form division order and marketing agreement (form division order), which was signed by each Petitioner. According to Yates, its form division order allows it to withhold payment of oil and gas royalties pending the resolution of title issues, and when it eventually disburses royalties, to pay the proceeds without interest. We reverse the Court of Appeals and affirm the district court's ruling.

**I.     BACKGROUND**

**{2}** Petitioners and the class members on behalf of whom they sued each own royalty interests in oil and gas production from the Runnin' AZH Com. No. 1 Well in Eddy County, New Mexico. Yates leases the property on which this well was drilled, and it operates the well. After the well was drilled and production began in August 2002, Yates had proceeds to distribute to the royalty interest owners. Yates sent form division orders to each Petitioner for signature, which required Petitioners to satisfy certain title requirements before they would be paid their share of the proceeds from the well. The form division order provided that in the event that a Petitioner failed to prove marketable title, "[Yates] is authorized to withhold payments without payment of interest until the claim is settled." In late May and early June of 2003, Petitioners executed and delivered the division orders to Yates. Approximately three years later, Yates sent the initial royalty payments to each Petitioner without interest.

2

**{3}** Petitioners demanded that Yates pay them interest on the royalty payments that had been held in suspense accounts beyond the six month statutory deadline set forth in Section 70-10-3 of the Oil and Gas Proceeds Payments Act (the Act), NMSA 1978, §§ 70-10-1 to -6 (1985, as amended through 1991). The district court found that the deadline by which Yates should have paid Petitioners under the statute was March 2003, and that because Yates failed to make payments by that deadline, it was required to hold Petitioners' payments in a suspense account. While Yates did comply with the Act by placing the royalties owed in suspense accounts until Petitioners returned the signed division orders and satisfied title requirements, it refused to pay interest on said amounts when it finally disbursed the funds. The district court found that it was standard procedure for Yates to withhold funds held in suspense. This procedure was based on Yates' form division order, which each Petitioner signed, that provides that no interest will be paid on funds held in suspense.

**{4}** The district court concluded that Section 70-10-4 of the Act unambiguously requires Yates to pay interest on the funds held in suspense. It further concluded that Section 70-10-4 expresses a strong public policy and that Yates' form division order violates that public policy by attempting to subvert the mandatory requirement to pay interest on suspended funds. Accordingly, the district court concluded that the provision in Yates' form division order denying payment of interest was unenforceable. The district court ultimately concluded that Petitioners are entitled to receive interest on the suspended funds.

**{5}** Yates appealed the district court's ruling, and the Court of Appeals reversed. *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 1. The Court of Appeals reasoned that "the mere fact that the Legislature enacted or modified a statute providing for a benefit does not establish that the Legislature intended that the policy embedded in the statute will, in all cases, outweigh the parties' right to contractually modify or waive the benefit." *Id*. ¶ 22. Further, the Court of Appeals held that since the Legislature provided that parties could contract around the deadline provision in Section 70-10-3, it was consistent to hold that Section 70-10-4, which makes no reference to the parties' ability to contract around it, also allowed contractual agreements to waive interest on suspended funds. *Yates Petroleum Corp.*, 2012-NMCA-064, ¶¶ 21, 23.

**{6}** The Court of Appeals also cited this Court's holding in *Murdock v. Pure-Lively Energy 1981-A, Ltd.*, 1989-NMSC-048, ¶¶ 16-17, 108 N.M. 575, 775 P.2d 1292, for the proposition "that contractual agreements to waive compensatory interest during a title dispute are valid and enforceable." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24. The Court of Appeals reasoned that when the Legislature amended Section 70-10-4 in 1991, it was well aware of the *Murdock* holding, yet it did not add language that abrogated that holding. *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24. It therefore concluded that the Legislature must agree that interest on suspended funds can be waived. *Id*. Finally, the Court of Appeals concluded that allowing parties to contract around the compensatory interest provision does not "manifestly tend to injure the public," as "the failure to accrue compensatory interest [under the provisions of the division order] is attributable to the interest holder's delay in proving marketable title, and not [to] any action of the payor." *Id*.

¶ 25 (alteration in original omitted) (internal quotation marks and citation omitted).

**{7}** This Court granted certiorari, and for the reasons that follow, we reverse the Court of Appeals and affirm the district court. *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2012-NMCERT-006. We hold that Section 70-10-4 is unambiguous and supports a public policy that entitles payees to receive interest on the oil and gas royalties that are held in suspense for a period longer than six months, and this statutory provision cannot be contracted around.

## II.    DISCUSSION

**{8}** As the Court of Appeals stated, "[t]his case turns upon whether the right to interest on the proceeds from production codified in Section 70-10-4 outweighs New Mexico's strong public policy favoring parties' rights to contract." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 6. This requires us to interpret Section 70-10-4. "Statutory interpretation is a question of law, which we review de novo." *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1 (internal quotation marks and citation omitted). "When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the Legislature." *Lobato v. State Env't Dep't*, 2012-NMSC-002, ¶ 6, 267 P.3d 65 (internal quotation marks and citation omitted). "[W]e begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Bank of New York*, 2014-NMSC-007, ¶ 40 (internal quotation marks and citation omitted). "Under the rules of statutory construction, [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration in original) (internal quotation marks and citations omitted). When gleaning legislative intent, we look to the language of the Act as a whole. *See T.W.I.W., Inc. v. Rhudy*, 1981-NMSC-062, ¶ 10, 96 N.M. 354, 630 P.2d 753 ("Legislative intent is determined by looking to the Act as a whole.").

### A.    Section 70-10-4 Expresses a Strong Public Policy in Favor of Royalty Interest Owners' Right to Receive Interest on Suspended Funds to which They Are Entitled

**{9}** Petitioners argue that Section 70-10-4, which provides that interest *shall* be paid on suspended funds, cannot be contracted around. Section 70-10-4, which provides the right to compensatory interest on suspended funds, states:

> A. . . . In instances where payments cannot be made within the time period provided in Section 70-10-3 NMSA 1978, the payor shall create a suspense account on his [or her] books for such interest or may interplead the suspended funds into court.

> B. The person entitled to payment from the suspended funds shall be entitled to interest on the suspended funds from the date payment is due

4

under Section 70-10-3 NMSA 1978. The interest awarded shall be the discount rate charged by the federal reserve bank of Dallas to member banks plus one and one-half percent on the date payment is due. Payment of principal and interest on the suspended funds shall be made to all persons legally entitled to the funds within thirty days from the date that the persons are determined to be entitled to the suspended funds by a final legal determination.

The statute has two requirements. Subsection A requires that when proceeds cannot be paid on time, the funds shall be held in a suspense account or interpleaded into court. *Id.* Subsection B provides that royalty interest owners shall be entitled to receive interest on suspended funds that they are legally entitled to receive. *Id.* The language in the statute clearly reflects the Legislature's intent to mandate that royalty interest owners who are legally entitled to proceeds, but who are not paid on time, shall receive interest on funds that are rightfully owed to them. The Court of Appeals agreed that this is plainly the object of the statute. *See Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 17 ("We agree with the district court that Section 70-10-4 . . . plainly states that interest accrues on funds held in suspense during the time title questions prevent disbursement, and once title is resolved, both principal and accrued interest are payable."). We agree with the both the Court of Appeals and the district court on this point.

**{10}**     Yates argues that by signing the form division order, Petitioners contracted away their statutory right to receive interest on suspended funds, and therefore it is relieved of the obligation to pay interest. Yates' form division order reads:

> If any claim is made which adversely affects title to any interest credited hereunder, or such title is unmarketable in the opinion of a licensed New Mexico attorney, the parties credited with such interest severally agree to furnish abstracts or other evidence of title acceptable to [Yates], and to cure any defects which render the title of the Interest Owners unmarketable, without expense to [Yates]. In the event of failure to furnish such evidence of marketable title, [Yates] is authorized to withhold payments *without payment of interest* until the claim is settled.

(Emphasis added.) This provision in Yates' form division order contravenes the clear mandate expressed by the Legislature in Section 70-10-4.

**{11}**     Because this provision contravenes the requirements of Section 70-10-4, the question is whether the parties can contract around it to waive interest on the oil and gas royalties held in suspense accounts. We have held that "New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 20, 134 N.M. 341, 76 P.3d 1098 (alteration in original) (internal quotation marks and citations omitted); *accord Acacia Mut. Life Ins. Co. v. Am. Gen. Life Ins. Co.*,

5

1990-NMSC-107, ¶ 1, 111 N.M. 106, 802 P.2d 11 ("The right to contract is jealously guarded by this court, but if a contractual clause clearly contravenes a positive rule of law, it cannot be enforced."). As the Court of Appeals correctly noted below, contracts are "void as being contrary to public policy, [when] they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 20 (internal quotation marks and citations omitted). The basis of Yates' argument is that there is no clear policy statement in the language of the statute, therefore the parties should be free to contract around its mandate. We disagree. Every statute is a manifestation of some public policy. Just because the Legislature did not expressly include a statement of what the public policy is in the text of the statute does not mean that it does not intend to further a strong public policy. In this case, the public policy is in favor of royalty interest owners.

{12}     Consistent with the principles of statutory interpretation, we glean from the language of the Act a strong public policy in favor of establishing the rights of royalty interest owners. *See Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 ("The first and most obvious guide to statutory interpretation is the wording of the statutes themselves." (internal quotation marks and citation omitted)). The Act sets terms for payment of oil and gas proceeds to royalty owners. This evidences the Legislature's acknowledgment of royalty interest owners' lack of bargaining power in oil and gas transactions. Yates' own internal standard practice is a clear example of this imbalance in bargaining power. As a matter of standard practice, Yates unilaterally decided that it would not comply with the mandates of Section 70-10-4, and it effectuated that decision in its form division order. This form division order is routinely sent to Yates' royalty interest owners, like Petitioners, who have no real choice but to accept its terms in order to receive their royalties. Yates maintains that the form division order could have been amended if Petitioners did not agree to its terms, and in fact some Petitioners did just that. Despite the fact that some Petitioners amended the division orders to exclude the interest waiver provision, Yates continued to withhold the payment of interest owed to them.

{13}     In acknowledging this disparity in bargaining power, the Legislature unequivocally established the basic terms by which oil and gas proceeds are to be paid. It did so in numerous sections of the Act. Section 70-10-3, which articulates that proceeds shall be paid to those legally entitled to them, establishes a firm deadline by which they must be paid. Section 70-10-3.1(C) states that "[i]f the purchaser or payor is unable to locate any person listed by the operator or lessee then the purchaser or payor shall notify the operator or lessee that he [or she] has been unable to locate or obtain the address of the person entitled to payment." Section 70-10-4, the provision at issue in this case, mandates that when proceeds payments are delayed pending the resolution of who is entitled to payment, then upon resolution that person shall be entitled to interest on the suspended funds. Section 70-10-5 imposes a penalty on the payor for failing to pay the proceeds promptly. Finally, Section 70-10-6 provides that reasonable attorneys' fees shall be recovered by the prevailing party in any action under the Act. Because actions are most likely to be brought by the interest owner

6

who has not been paid according to the terms mandated by the Act[1], the specific provision for attorney fee shifting can be read as encouraging payees to enforce the provisions of the Act. The Act puts the onus on the payor, in this case Yates, to furnish the correct party with a division or transfer order setting forth proper interest to which the owner is entitled, to pay that party on time, and to pay interest on proceeds owed if there is either any delay in identifying the party to be paid or if the payor simply fails to pay on time. By protecting the interests of the payee in every section of the Act, the Legislature furthers a strong public policy that equalizes the bargaining power between the parties in oil and gas transactions.

**{14}** Principles of contract law usually enable parties to establish the terms of a contract. Yates argues that freedom of contract principles should prevail, and therefore the parties should be allowed to contract around the provisions of the Act by the use of its form division order. We disagree. For the reasons stated above, we read the Act as establishing specific terms of oil and gas contracts to equalize the parties' bargaining positions. The mandated terms in the Act clearly express the Legislature's intent that the basic terms of payment in oil and gas transactions are established by the Act.

**{15}** Yates relies on Section 70-10-3, which provides that parties to the oil and gas transaction may come to their own terms as to when the proceeds may be paid. Section 70-10-3 provides, in pertinent part:

> The oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in New Mexico shall be paid to all persons legally entitled to such payments, commencing not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production unless other periods or arrangements are provided for in a valid contract with the person entitled to such proceeds.

Yates argues that since the Legislature allows parties to determine when proceeds are paid, it intended to allow the parties to contract around the interest payments mandated by Section 70-10-4. We do not read the Legislature's permission to contract in Section 70-10-3 and its silence on this issue in Section 70-10-4 as its express permission to contract around Section 70-10-4, particularly when the Legislature explicitly allowed for contractual modification in Section 70-10-3. *See Sims v. Sims*, 1996-NMSC-078, ¶ 22, 122 N.M. 618, 930 P.2d 153 ("'[T]he courts will not add to such a statutory enactment, by judicial decision, words which

---

[1]It is difficult to envision a scenario in which a payor would bring suit because *it* failed to pay proceeds, Section 70-10-3; failed to pay proceeds on time, Section 70-10-3; failed to locate the interest owners to whom funds were owed, Section 70-10-3.1; failed to pay interest on suspended funds, Section 70-10-4; or failed to pay penalty interest, Section 70-10-5.

7

were omitted by the legislature.'" (quoting *State ex rel. Miera v. Chavez*, 1962-NMSC-097, ¶ 7, 70 N.M. 289, 373 P.2d 533)).

**{16}**    Because the Legislature explicitly allowed for contractual modification in Section 70-10-3, it could have expressly provided for the same in Section 70-10-4 had it intended to allow the parties to modify the obligations in that section. We will not read language into Section 70-10-4 that does not exist. *Sims*, 1996-NMSC-078, ¶ 22.

**{17}**    Yates reads these two sections together, as did the Court of Appeals, to conclude that if the Legislature allowed a contractual waiver of the statutory right in Section 70-10-3, then its silence in Section 70-10-4 must also mean that it approved the same kind of waiver regarding interest on suspended funds. *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 23. Its rationale is that if the Legislature allows the parties to decide *when* a royalty interest owner must be paid, they may also decide *whether* such payment should be placed in a suspense account, and whether interest must be paid on those funds. Yates reasons that a payor and a payee could conceptually agree that payment was not due until all title issues are resolved. Yates asserts that if nothing would therefore be owed, nor required to be held in a suspense account, then no interest could be earned.

**{18}**    While the parties may be free to agree when payment on production is due to the royalty owners under Section 70-10-3, thereby theoretically negating the need to place the funds in a suspense account, Yates' form division order does not provide such a mechanism. To the contrary, the division order closely tracks language in Section 70-10-3. Therefore, we conclude that when Yates failed to pay Petitioners after six months, it was obligated pursuant to Section 70-10-4 to place the funds in a suspense account where it would accrue interest until it was paid to Petitioners.

**{19}**    This Court recognizes the need for certainty in business dealings. It is true that "[g]reat damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties." *Berlangieri*, 2003-NMSC-024, ¶ 20 (internal quotation marks and citations omitted). However, Yates can hardly claim uncertainty when the Legislature made it clear in the Act nearly thirty years ago that compensatory interest shall be paid on suspended funds in New Mexico, nor is Yates damaged by any alleged uncertainty. By entering into these business dealings, Yates could not have reasonably expected that it would have been entitled to withhold the statutorily mandated interest earned on funds rightfully owed to others. Since the statute specifically provides for a calculation of interest, the cost of such interest, if any, comes as no surprise to Yates. Furthermore, the statute provides that these funds may be interpleaded into court, which would relieve Yates of the interest obligation. Section 70-10-4(A).

**{20}**    For the foregoing reasons, we hold that Section 70-10-4 expresses a clear public policy in favor of Petitioners' right to interest on funds to which they are entitled, and this statutory provision cannot be contracted around.

**B.** *Murdock* **Is Distinguishable**

**{21}** The Court of Appeals based its rationale in this case in part on this Court's holding in *Murdock*, stating that "contractual agreements to waive compensatory interest during a title dispute are valid and enforceable." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24 (citing *Murdock*, 1989-NMSC-048, ¶¶ 16-17). The Court of Appeals noted that "when the Legislature amended the Act in 1991, it did not enact language prohibiting contractual agreements in division orders from waiving compensatory interest while a title question is being resolved." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24. Therefore, the Court of Appeals reasoned, "*Murdock*'s holding was in no way addressed or changed by the Legislature in the 1991 amendments." *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24. As a result, the Court of Appeals concluded "that the Legislature did not intend the 1991 amendments to modify or conflict with *Murdock*'s holding." *Id.* Yates asserts that this Court has held that contractual clauses waiving compensatory interest on suspended funds are valid, despite statutory language in Section 70-10-4 mandating payment of interest. We are unpersuaded because there is a critical distinction between this case and *Murdock*, which did not consider the specific statutory mandate we now review in Section 70-10-4.

**{22}** In *Murdock*, we held that a division order provision, much like the one at issue in this case, permissibly waived statutory interest provided for by NMSA 1978, Section 56-8-3(B) (1983). *Murdock*, 1989-NMSC-048, ¶ 12. In that case, like here, a royalty interest owner sought interest on suspended royalty proceeds. *Id.* ¶ 1. However, the interest owner's "sole legal theory for recovery of interest . . . was NMSA 1978, Section 56-8-3(B) (Cum.Supp. 1985)." *Murdock*, 1989-NMSC-048, ¶ 11. Section 56-8-3(B) is a statute regarding commercial instruments and transactions which provides that "[t]he rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually . . . on money received to the use of another and retained without the owner's consent expressed or implied . . . . " In evaluating the royalty interest owner's claim in *Murdock*, we concluded that "Section 56-8-3(B) does not create a liability for interest if the retention of a payable obligation is proper." 1989-NMSC-048, ¶ 12. Hence, we held that "[w]hen an express provision of a contract stipulates that a payable obligation is to bear no interest, there can be no implied contract to pay interest under Section 56-8-3." *Murdock*, 1989-NMSC-048, ¶ 12.

**{23}** The important distinction between *Murdock* and the case now before us is that the Court is now called upon to analyze an entirely separate legislative mandate. In *Murdock*, we weighed the freedom of contract against a statutory interest provision that the Legislature intended to apply to commercial instruments and commercial transactions generally. In *Murdock*, this Court was not asked to, nor did it consider the clear public policy expressed in the Act when it considered the enforceability of the division order. This Court specifically acknowledged that "[t]he New Mexico legislature has addressed the issue of oil proceeds payments, including interest on late payments, in the Oil and Gas Proceeds Payment Act," but the Act was "[e]nacted after the relevant events in the instant case." *Murdock*, 1989-NMSC-048, ¶ 19 (citation omitted). This distinction is important to the analysis upon which

9

we base our holding in this case—the express language of Section 70-10-4, which requires in no uncertain terms that interest on suspended funds *shall* be paid. In contrast, Section 56-8-3 clearly allows for contractual modification of the statutory interest rate by stating "in the absence of a written contract fixing a different rate." Similar language does not exist in Section 70-10-4.

**{24}** Finally, *Murdock* did not consider the principle of the freedom of contract in light of the very specific mandates of the Act, as we do here. Rather, its holding was based on a completely distinct, general statute that does not specifically address the uniqueness of oil and gas transactions. The Court of Appeals adopted Yates' assertion that because the Legislature did nothing to abrogate the *Murdock* holding in subsequent amendments to the Act, it must have acknowledged the right to contract around Section 70-10-4. *Yates Petroleum Corp.*, 2012-NMCA-064, ¶ 24. "[A]mendments by implication are not favored." *Johnston v. Bd. of Educ. of Portales Mun. Sch. Dist. No. 1, Roosevelt Cnty.*, 1958-NMSC-141, ¶ 36, 65 N.M. 147, 333 P.2d 1051. We rest our holding on the clear and unequivocal mandate in Section 70-10-4 that interest *shall* be paid on suspended funds. Accordingly, we distinguish *Murdock*—its rationale regarding Section 56-8-3 does not apply in light of the very specific mandate of Section 70-10-4.

## III.    CONCLUSION

**{25}** We conclude that the provision waiving the statutory right to compensatory interest in Yates' form division order is unenforceable because it contravenes a clear, strong public policy set forth in Section 70-10-4, which mandates that royalty interest owners be paid interest on funds that they are legally entitled to receive. Accordingly, we reverse the Court of Appeals, affirm the district court, and remand for further proceedings consistent with this opinion.

**{26}    IT IS SO ORDERED.**

_____

**BARBARA J. VIGIL, Chief Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**