802 P.2d 11

**ACACIA MUTUAL LIFE INSURANCE COMPANY, et al., Plaintiffs,**

**v.**

**AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., Involuntary Plaintiff,**

**v.**

**ADS ASSOCIATE, L.P., et al., Defendants,**

**v.**

**Aaron David SILVER and Jerilyn H. Silver, Defendants–Appellants,**

**v.**

**John CLARK, Receiver for Santa Fe Private Equity Fund II, Receiver–Appellee.**

**ACACIA MUTUAL LIFE INSURANCE COMPANY, et al., Plaintiffs,**

**v.**

**AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., Involuntary Plaintiff,**

**v.**

**ADS ASSOCIATES, L.P., et al., Defendants,**

**v.**

**ADS PARTNERS, L.P., Defendant–Appellant,**

**v.**

**John CLARK, Receiver for Santa Fe Private Equity Fund II, Receiver–Appellee.**

Nos. 17782, 17783.

Supreme Court of New Mexico.

Nov. 28, 1990.

Rehearing Denied Jan. 9, 1991.

Roth, VanAmberg, Gross, Amarant & Rogers, F. Joel Roth, Santa Fe, for defendants-appellants.

Montgomery & Andrews, Walter J. Melendres, Santa Fe, for receiver-appellee.

## OPINION

BACA, Justice.

■ Appellant David Silver was the general partner of the Santa Fe Private Equity Fund II, L.P. (SFPEF II), a limited partnership. He appeals from a court order that affirms a settlement agreement arrived upon by the limited partners through their receiver, John Clark, appellee. The order distributes the assets of the limited partnership in the order of priority mandated by the legislature in Section 54–2–23 of the Uniform Limited Partnership Act. *See* NMSA 1978, §§ 54–2–1 to –30 (Repl.Pamp. 1988). Silver claims that this order unjustly bars his contractual indemnification claim as set out in the partnership agreement. The right to contract is jealously guarded by this court, but if a contractual clause clearly contravenes a positive rule of law, it cannot be enforced, *General Electric Credit Corp. v. Tidenberg*, 78 N.M. 59, 428 P.2d 33 (1967). The indemnification clause clearly contravenes the order of priority in the distribution of assets of a dissolved limited partnership as set out by the legislature. We, therefore, affirm.

## FACTS

In February 1987 the limited partners unanimously voted to terminate their failing partnership, which had shown a loss from the outset, and filed in district court for a confirmation of the dissolution of SFPEF II. They also voted to remove Silver as general partner, but allowed him to resign. Clark was named as receiver and published a notice of dissolution of the partnership in *The Santa Fe New Mexican* on March 23, 1987. This notice requested creditors to respond with claims against the partnership within fourteen days. Silver wrote a letter within this time, asserting his claim under the partnership agreement for indemnification and reimbursement from the partnership for any partnership debts he paid.

After the notification of dissolution, Clark began negotiations with known creditors of the limited partnership and a determination of the status of the SFPEF II. In analyzing the assets and liabilities of

SFPEF II, Clark determined that the limited partners had contributed in excess of $7 million, but he could document only $2.4 million in investments. The estimated value of SFPEF II was eventually determined to be negative $1.4 million, equaling a loss to the limited partners of $8.4 million. Aside from checks written to the general partners in excess of $1 million, the balance of the limited partners' contributions remains unaccounted for.

Clark determined the amount necessary to settle all creditors' claims and on that basis made a third, partial capital call to limited partners to wind up affairs and terminate the partnership. At this point some of the limited partners refused to pay a third partial capital call, claiming other limited partners had not yet paid on the second call.

Approximately a year after the request for confirmation of dissolution was filed, the dispute finally was settled. Clark arrived upon a global settlement agreement that allowed creditors to be paid and the receivership to be terminated. Under the settlement the limited partners were to contribute a final $1.3 million. The settlement agreement also provided for payment of creditors, distribution of any remaining liquid assets to the limited partners, and assignment of all of the partnership's claims against the general partners to one limited partner. Approval of the settlement by the court would bar all claims of creditors who had not asserted a claim. The motion for confirmation was served on Silver, who objected and asserted his indemnification claim from SFPEF II. This was over a year after notification of dissolution and the letter written by Silver to the receiver in March of 1987—the only notice of Silver's indemnification claim. The district court held that Silver's claim was untimely and approved the settlement that foreclosed Silver's indemnification claim. This appeal is taken from that order.

## ISSUES—AND NON–ISSUES

Silver phrases the six points of his appeal in terms of his timely notice of a claim against the partnership and of an improper "bar" to this claim for indemnification, along with related claims of procedural due process, equal protection violations, and laches. We identify the issues differently.

We are dealing here with the time-worn principles underlying limited partnerships that restrict the potential liability of a "limited" partner and hold a "general" partner to general, personal liability. "[L]imited partners * * * take no part in management, share profits and *do not share losses beyond their capital contributions to the firm.*" A. Bromberg, *Crane & Bromberg on Partnership*, § 26 at 143 (1968) (emphasis added).

Indemnifying a general partner for partnership debts by essentially forcing limited partners to pay for them violates the general public policy of limited partnership law. However, it is not necessary to decide this case on general policy grounds alone because such grounds are incorporated into specific statutory provisions that control the order of priority of distribution of assets in these circumstances, and the general partner is statutorily the last in priority. A court cannot depart from the express language of an act, but can only say what the legislature intended. *Security Escrow Corp. v. Taxation & Revenue Dep't,* 107 N.M. 540, 760 P.2d 1306 (Ct.App. 1988); *State v. Michael R.,* 107 N.M. 794, 765 P.2d 767 (Ct.App.1988).

The partnership agreement itself supports our interpretation. Silver argues that in the partnership agreement a clause existed, 13(b), which provides that the "Partnership * * * shall indemnify * * * the General Partner [and] its partners * * * against all claims * * * incurred by them in connection with their activities on behalf of the Partnership * * *." This clause, however, is subject to paragraph 6(f) of the partnership agreement, which deals with liability of limited partners and states in pertinent part: "No limited Partner shall be liable for any debts or obligations of the Partnership, including obligations in respect of indemnification provided in paragraph 13, in excess of its unpaid Capital Contribution * * *."

The partnership was terminated, pursuant to its requirements, when the limited partners unanimously voted to terminate. At this point the partnership, along with potential remaining capital calls, went into receivership and dissolution, and this dissolution came under the New Mexico Limited Partnership Act. NMSA 1978, Section 54–2–23 (Repl.Pamp.1988) sets out the order of priority for the distribution of assets:

A. In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

(1) those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners;

(2) those to *limited partners* in respect to their share of the profits and other compensation by way of income on their contributions;

(3) those to *limited partners* in respect to the capital of their contributions;

(4) those to *general partners* other than for capital and profits;

(5) those to general partners in respect to profits;

(6) those to general partners in respect to capital.

(Emphasis added.)

The law of New Mexico mandates that in a dissolution of a limited partnership, the limited partners are to be paid off before the general partners. The interpretation of the indemnification clause in the contract urged by Silver would have the general partners paid off *by* the limited partners. Since there are no assets left in this terminated partnership, to indemnify the general partner would require the limited partners to contribute even more funds to a dead entity. The clear language of a statute must be given its full meaning. *Schoonover v. Caudill*, 65 N.M. 335, 337 P.2d 402 (1959); *Weiser v. Albuquerque Oil & Gasoline Co.*, 64 N.M. 137, 325 P.2d 720 (1958). To indemnify the general partners would contravene this statute and is therefore unenforceable. We AFFIRM.

IT IS SO ORDERED.

STEVE HERRERA, District Judge, concurs.

RANSOM, J. (specially concurs.)

RANSOM, Justice (specially concurring).

In essence, the question on appeal appears to be whether, in light of Section 54–2–23(A), an agreement to indemnify the general partner for certain claims is, after dissolution, ineffective if indemnification is sought from unpaid capital contributions of limited partners. Section 54–2–23(A) provides in part that:

A. In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

(1) those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners;

\*     \*     \*     \*     \*     \*

(3) those to limited partners in respect to the capital of their contributions;

(4) those to general partners other than for capital and profits \* \* \*.

I believe a general partner's claim for indemnification from the partnership falls under subsection (4) and not subsection (1) of Section 54–2–23(A). Thus, after dissolution, capital contributions of limited partners would be repaid before any liabilities of the partnership to general partners. For this reason, I do not perceive a conflict between the indemnity agreement at issue here and the New Mexico statutes concerning distribution of partnership assets. The opinion assumes this conflict exists, i.e., "If Mr. Silver's claim for indemnification were honored, the limited partners would necessarily share losses and contribute beyond their capital contributions to the firm after it was voted dissolved." I find it unnecessary to address and consequently express no opinion as to whether the parties to a limited partnership are prohibited by statute and public policy from varying *among themselves* the order of priority in the distribution of assets of a dissolved limited

partnership. The agreement in this case does not purport to do so.