**Certiorari Denied, October 24, 2017, No. S-1-SC-36688**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2018-NMCA-007**

**Filing Date: September 5, 2017**

**Docket No. A-1-CA-34737**

**NEW MEXICO CORRECTIONS DEPARTMENT,**

**Appellant-Petitioner,**

**v.**

**AMERICAN FEDERATION OF STATE,**
**COUNTY, AND MUNICIPAL EMPLOYEES,**
**COUNCIL 18, AFL-CIO,**

**Appellee-Respondent.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Paula E. Ganz
Jennifer R. James
Deputy General Counsel
New Mexico Corrections Department
Santa Fe, NM

for Appellant

Shane Youtz
Stephen Curtice
James A. Montalbano
Youtz & Valdez, P.C.
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

1

**{1}**     The State of New Mexico Corrections Department (the Department) appeals the district court's denial of the Department's motion for reconsideration following the district court's on-record affirmation and adoption of the Public Employee Labor Relations Board's (PELRB) September 2009 order and the PELRB hearing examiner's July 2009 order, both of which found the Department to have committed a prohibited practice in violation of NMSA 1978, Section 10-7E-19(A) (2003) of the Public Employee Bargaining Act (PEBA). We affirm.

**BACKGROUND**

**{2}**     On February 10, 2009, Respondent filed a prohibited practices complaint (PPC) with the PELRB against the Department, alleging that the Department had violated Section 10-17E-19 by discriminating against two of the Department's employees, Frank Blair and Gabe Molina. The basis of the PPC was that Blair and Molina, who are also union members and officials of the American Federation of State, County, and Municipal Employees (AFSCME) Local 3422 (Corrections Officers), had requested and were denied use of a state vehicle to travel to and from a policy review meeting with Department management on January 26, 2009. Blair and Molina were attending the meeting in their capacity as state employee union officials (employee officials). Employee officials are union officials or stewards who are also state employees. Per the parties' 2005 collective bargaining agreement (CBA), employee officials are "on paid status" when they attend "meetings agreed to by the parties for purposes of administration of [the CBA]." Other Department employees attending the same meeting in their capacity as management were allowed to use a state vehicle to travel to and from the meeting, the purpose of which was to discuss various labor-management issues. A hearing on the merits was held before PELRB Director Juan Montoya (the hearing examiner) on July 1, 2009, during which the following facts were elicited.

**{3}**     The purpose of labor-management meetings is to provide the Department and the union an opportunity to resolve issues that arise in the workplace in order to promote a cooperative relationship between the parties and enhance the orderly operation and functioning of the Department's facilities. Policy review meetings, such as the one held on January 26, 2009, are a type of labor-management meeting that is convened when the Department proposes policy changes affecting the CBA. Such meetings are typically convened by the Department's Human Resources Bureau Chief Elona Cruz, who is the Department's administrator of the CBA. When convened, representatives of both Department management and employee officials are required to attend per the CBA.

**{4}**     Cruz used a state vehicle to attend such meetings, including the meeting on January 26, 2009. On approximately a dozen occasions from 2005 through 2008, Cruz granted employee officials permission to do the same. In January 2009 Cruz issued a directive to the Department, disallowing use of state vehicles by employee officials. Cruz's directive was in response to direction she received from the State Personnel Office (SPO), which had received a legal opinion (the opinion) in December 2008 from the General Services Department's (GSD) general counsel that concluded that state law prohibits the use of state

vehicles by union officials and stewards, including employee officials. The opinion responded to a general inquiry from SPO Director Sandra Perez regarding an issue that had arisen during negotiations between the state and different unions, including AFSCME, and did not address the specific factual scenario presented in this case.

{5}     According to GSD Secretary Arturo Jaramillo, GSD is the only state agency with the authority to own, lease, and insure state vehicles. GSD is also the only state agency with the authority to establish rules and regulations for the use of state vehicles. Secretary Jaramillo explained that under the New Mexico Administrative Code, the general eligibility requirements for using a state vehicle are: (1) status as a state employee, (2) possession of a valid driver's license, (3) completion of a defensive driving course, and (4) the use must be "in furtherance of official state business." He also testified that the term "official state business" is not defined by statute or regulation, and determinations of whether use of a vehicle is in furtherance of official state business are made on a case-by-case basis, taking into consideration "the whole complex" of facts, not just one particular fact. When asked whether, in general, there are instances where a union official's use of a vehicle would be in furtherance of official state business, Secretary Jaramillo responded, "I could envision that, where the interests of the state and the union relat[e] to resolution of a matter of common interest, I would argue that is in furtherance of state business." He offered grievance meetings as an example of a type of labor-management meeting that would qualify for use of state vehicles by employee officials because such meetings are "in furtherance of official state business because it would be in the state's interests to resolve grievances." As an example of what he would not consider an appropriate use of a state vehicle by an employee official, he stated that a meeting relating to a "matter of pure internal administration by the union" is not something he would consider to be in furtherance of official state business. Secretary Jaramillo emphasized that determinations must be made based on all of the facts—not any particular fact, such as how an employee's time is coded—and that the ultimate question to answer in deciding whether use of a state vehicle is authorized is whether such use is in furtherance of official state business.

{6}     The hearing examiner concluded that "[a] state employee who is also a union official of a state bargaining unit is on official state business while attending labor-management relations meetings, grievance meetings[,] and other meetings necessary for the administration of the [CBA]." As such, he determined that the Department had committed a prohibited practice in violation of Section 10-7E-19(A) by treating Blair and Molina differently than management employees regarding the use of state vehicles to attend the January 2009 policy review meeting and ordered the Department to "cease and desist" from such practice. The PELRB affirmed the hearing examiner's decision and order.

{7}     The Department appealed the PELRB's decision to district court, arguing that the decision was not in accordance with law. Specifically, the Department argued that the decision conflicts with myriad statutes—including Section 10-7E-19(A); NMSA 1978, Section 10-7E-6 (2003); and New Mexico's Transportation Services Act (TSA), NMSA 1978, §§ 15-8-1 to -11 (1994, as amended through 2013)—as well as the New Mexico

3

Constitution's Anti-Donation Clause, N.M. Const. art. IX, § 14. The district court affirmed the PELRB's order and adopted the findings and conclusions of the hearing examiner. In its motion for reconsideration, the Department reiterated its previous arguments and also argued that the decision overlooked and is in conflict with various provisions of the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015). The district court denied the Department's motion, and the Department timely filed for a writ of certiorari under Rule 12-505 NMRA, which this Court granted.

## DISCUSSION

**{8}** The ultimate question we must answer in this case is whether the PELRB erred in concluding that the Department committed a prohibited practice by not allowing employee officials to use a state vehicle to attend a policy review meeting called by the Department when management employees were allowed to use a state vehicle to attend the same meeting.

### Standard of Review

**{9}** "Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 8, 149 N.M. 379, 249 P.3d 510 (alteration, internal quotation marks, and citation omitted). "In reviewing an administrative decision, we apply a whole-record standard of review." *Town & Country Food Stores, Inc. v. N.M. Reg. & Licensing Dep't*, 2012-NMCA-046, ¶ 8, 277 P.3d 490 (internal quotation marks and citation omitted). "We independently review the entire record of the administrative hearing to determine whether the [PELRB]'s decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Puccini*, 2011-NMCA-021, ¶ 8 (internal quotation marks and citation omitted). "When reviewing an administrative agency's conclusions of law, we review de novo." *Id.* We "apply a de novo standard of review to [administrative] rulings regarding statutory construction." *Albuquerque Bernalillo Cty. Water Util. Auth. v. N.M. Pub. Reg. Comm'n* (*ABCWUA*), 2010-NMSC-013, ¶ 50, 148 N.M. 21, 229 P.3d 494. We "will generally defer to an agency's reasonable interpretation of its own ambiguous regulations, especially where the subject of the regulation implicates agency expertise[.]" *Id.* ¶ 51 (internal quotation marks and citation omitted). However, we are "not bound by the agency's interpretation," and we may substitute our own "independent judgment for that of the agency if the agency's interpretation is unreasonable or unlawful." *Id.* (omission, internal quotation marks, and citation omitted).

### The PEBA: Intent and Prohibited Practices

**{10}** The Legislature declared the purpose of the PEBA as being "[(1)] to guarantee public employees the right to organize and bargain collectively with their employers[;] [(2)] to

promote harmonious and cooperative relationships between public employers and public employees[;] and [(3)] to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." NMSA 1978, § 10-7E-2 (2003). Consistent with the second and third stated purposes, the Legislature provided that it shall be a prohibited practice for a public employer to "discriminate against a public employee with regard to terms and conditions of employment because of the employee's membership in a labor organization[.]" Section 10-7E-19(A). Treating two similarly situated persons differently on the basis of an identifiable characteristic is the hallmark of discrimination. *Cf.* NMSA 1978, § 28-1-7 (2004) (describing an "unlawful discriminatory practice" under the New Mexico Human Rights Act as being where an employer takes an employment action "because of" a particular trait, such as race, age, religion, or sex); *Griego v. Oliver*, 2014-NMSC-003, ¶ 27, 316 P.3d 865 (explaining that under equal protection analysis, the first question to ask in determining the constitutionality of a discriminatory state law is "whether the legislation creates a class of similarly situated individuals and treats them differently"); *Burch v. Foy*, 1957-NMSC-017, ¶ 10, 62 N.M. 219, 308 P.2d 199 (discussing "the requirements of legal and constitutional classification, i.e., equal protection of the law[,]" explaining that in order to be legal, a classification "must be founded upon real differences of situation or condition, which bear a just and proper relation to the attempted classification, and reasonably justify a different rule[,]" and concluding that "[i]f persons under the same circumstances and conditions are treated differently, there is arbitrary discrimination, and not classification"). Under Section 10-7E-19(A), union membership is the identifiable characteristic that may not serve as the basis for treating an otherwise similarly situated public employee differently with respect to the terms and conditions of his or her employment.

**{11}** Here, the uncontroverted facts are that the Department treated state employees who were members of the union (Blair and Molina) differently than a state employee who was not (Cruz) by allowing the non-union employee to use a state vehicle to attend the same Department-called meeting for which the union employees' request to use a state vehicle had been denied. The Department has never argued that it did not treat Blair and Molina differently based on their union status but instead offers a variety of possible reasons why its conduct does not violate Section 10-7E-19(A). We consider each proffered basis in turn.

1.     **Whether Anti-Union Animus Is Required to Establish Discriminatory Treatment Under Section 10-7E-19(A) of the PEBA**

**{12}** The Department first argues that we should interpret Section 10-7E-19(A) in accordance with how federal cases interpret a similar—but not identical—provision of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(3) (2015). According to the Department, this approach leads to the conclusion that there cannot be discriminatory treatment with regard to terms and conditions of employment absent evidence of anti-union animus or a retaliatory motive for taking a particular action. AFSCME points out that the federal cases cited by the Department relate to a provision in the NLRA that tracks Section 10-7E-19(D) of the PEBA, not Subsection A, and that our Legislature adopted Subsection

A as an additional protection against discrimination even where there is no evidence of anti-union animus or retaliation against employees who engage in union activities. We agree with AFSCME.

**{13}** By its plain language, Section 10-7E-19(A) requires only that the discriminatory treatment be "because of the employee's membership in a labor organization" in order for such treatment to constitute a prohibited practice. We decline to read into the statute a requirement that there be evidence that anti-union animus was the underlying motivation for a public employer's discriminatory treatment of a public employee in order to constitute a violation of Section 10-7E-19(A). *See Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 46, 333 P.3d 947 ("New Mexico courts have long honored [the] statutory command [that the text of a statute or rule is the primary, essential source of its meaning] through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)). The simple fact that the decision discriminates against an employee because of his or her union status is sufficient to constitute discrimination—and a prohibited practice—under Section 10-7E-19(A). *See id.*; *Northern N.M. Fed. of Educ. Emps. v. Northern N.M. College*, 2016-NMCA-036, ¶ 18, 369 P.3d 22 (explaining that the question presented by the prohibited practices complaint was whether the employment-related decisions "were motivated by discriminatory *or* retaliatory reasons" (emphasis added)). Thus, AFSCME was not required to prove that the Department's action was retaliatory or motivated by anti-union animus in order for the hearing examiner to conclude that the Department had engaged in a prohibited practice.

**2. Whether the 2005 CBA's Silence Regarding Use of a State Vehicle by Employee Officials Is Dispositive as to Whether Section 10-7E-19(A) Was Violated**

**{14}** The Department also relies on the absence of a provision in the CBA establishing an express right of employee officials to use state vehicles to attend labor-management meetings to defend its actions. The Department argues that "[t]he use of state vehicles does not follow from the bargained-for right to be paid for certain [union] activities, precisely because the 2005 CBA does not also confer the right to use state vehicles." But whether the CBA provides a *right* to use state vehicles is simply the beginning of the inquiry, not the end because while parties may agree to supplement statutory rights under a contract, the public policy of freedom to contract yields when a contract's terms contravene existing law. *See Acacia Mut. Life Ins. Co. v. Am. Gen. Life Ins. Co.*, 1990-NMSC-107, ¶ 1, 111 N.M. 106, 802 P.2d 11 ("The right to contract is jealously guarded by [New Mexico courts], but if a contractual clause clearly contravenes a positive rule of law, it cannot be enforced[.]"). In other words, the absence of a CBA provision allowing use of a state vehicle is merely evidence that the parties did not reach a bargained-for agreement to allow such use by right and establishes nothing more than the Department did not breach the terms of the CBA. It does not somehow either waive the general protections of the PEBA or establish that the Department did not violate its statutory obligations under Section 10-7E-19(A).

6

**3.** **Whether Employee Officials Attending a Policy Review Meeting With the Department Are Acting In Furtherance of Official State Business**

**{15}** The Department primarily defends its disparate treatment of Blair and Molina by arguing that their attendance at the policy review meeting was not "in furtherance of official state business" but was rather for the purpose of furthering the "union's agenda" and "union business." The Department relies on state statutory and regulatory law—specifically the TSA, and its companion regulations, 1.5.3 NMAC (10/28/1985, as amended through 7/30/2015)—to support its contention that it was prohibited from allowing Blair and Molina to use a state vehicle to attend the policy review meeting. In effect, the Department's argument, if correct, would establish that the Department treated Blair and Molina differently not "because of" their union status (a prohibited reason for discriminating against them) but because of their ineligibility to drive a state vehicle (a non-prohibited reason). We consider whether the TSA or 1.5.3.7 NMAC provides a sufficient basis justifying the Department's actions.

**New Mexico Statutory and Regulatory Law Regarding Use of State Vehicles**

**{16}** The TSA defines "state vehicle" as "an automobile, van, sport-utility truck, pickup truck or other vehicle . . . used by a state agency to transport passengers or property[.]" Section 15-8-3(G). With respect to use of state vehicles, the TSA provides that the Transportation Services Division of the GSD "shall adopt rules governing the use of vehicles used by state agencies or by other persons . . . , including driver requirements and responsibilities, [and] under what circumstances someone can be assigned a state vehicle on a permanent or semipermanent basis." Section 15-8-6(A). By GSD-promulgated regulation, in order to be an "authorized driver" of a state vehicle, one must meet four general criteria: (1) be a state employee, (2) hold a valid driver's license, (3) have completed a defensive driving course, and (4) be using the vehicle "in furtherance of official state business[.]" 1.5.3.7(F)(1) NMAC.

**{17}** Neither the TSA nor regulations promulgated thereunder defines or provides further guidance regarding what is meant by the phrase "in furtherance of official state business." Secretary Jaramillo acknowledged that there is "no official definition" of what is considered "official state business" and explained that GSD considers whether a proposed use of a state vehicle is "in furtherance of official state business" on a case-by-case basis and that the determination is heavily fact-driven. He did not categorically reject the possibility of use of a state vehicle by employee officials, explaining that whether use of a vehicle is appropriate depends on the type of meeting and the facts of each case. Secretary Jaramillo did include meetings to discuss "matter[s] of common interest" among those that are "in furtherance of official state business" but did not affirmatively opine that the January 2009 policy review meeting was a qualifying meeting. The Department fails to argue how the phrase should be construed, instead summarily concluding—without explanation or citation to authority—that "union business" can never be "in furtherance of official state business" because "union business" and "state business" are inherently mutually exclusive. Because resolution of this

7

case turns on whether Blair and Molina were eligible to use a state vehicle depending on whether they were acting "in furtherance of official state business," we must first discern what is meant by that phrase. *See Fitzhugh v. N.M. Dep't of Labor*, 1996-NMSC-044, ¶ 22, 122 N.M. 173, 922 P.2d 555 (explaining that an appellate court "may always substitute its interpretation of the law for that of the agency's because it is the function of the courts to interpret the law" (internal quotation marks and citation omitted)).

**{18}** When a phrase in a regulation is ambiguous and not further defined, we "turn to the dictionary to ascertain its common and ordinary meaning." *ABCWUA*, 2010-NMSC-013, ¶ 82. The term "furtherance" means "[t]he act or process of facilitating the progress of something or of making it more likely to occur; promotion or advancement." *Black's Law Dictionary* 790 (10th ed. 2014). The term "official" means "[a]uthorized or approved by a proper authority." *Id.* 1259. The term "business" means "that with which one is principally and seriously concerned[.]" *The Random House Dictionary of the English Language* 201 (unabridged ed. 1971). Thus, one is acting "in furtherance of official state business" when one is facilitating the progress of or advancing a matter—authorized or approved by the state—with which the state is principally and seriously concerned. We emphasize that we examine the facts under this test on a case-by-case basis.

**Analysis**

**{19}** The Department effectively concedes that the January 2009 policy review meeting involved "official state business" as evidenced by its decision to allow Cruz to drive a state vehicle to the meeting. It argues, however, that "[union] representatives who attend a meeting on behalf of [the union] are not on state business in the same sense as [Department] employees who attend the meeting on behalf of [the Department] as the managerial employer." The Department contends that employee officials "have different status and purposes in attending the meeting even if there is a shared desire to reach agreement." According to the Department, employee officials' purpose in attending labor-management meetings is to "advocat[e] for the union's position." We find the Department's arguments unavailing for two reasons: first, the record contradicts the Department's contentions that employee officials attend policy review meetings only "on behalf of the union" and are merely "advocating for the union's position" at those meetings; and second, the Department's summary conclusion that "[u]nion business is not state business, and vice versa" rests on a false dichotomy.

**{20}** The Department's contention that corrections officer and AFSCME Local 3422 statewide president Lee Ortega "testified that he attends [policy review] meetings on behalf of AFSCME[] on 'union time' " is cherry-picked evidence that not only violates our appellate rules, *see* Rule 12-318(A)(3) NMRA (requiring that a party challenging the sufficiency of evidence "include[] the substance of the evidence bearing on the proposition"), but improperly characterizes Ortega's testimony. Ortega, in fact, resisted adopting the Department's conclusory labeling scheme that attempted to pigeonhole the parties' interests as evidenced by the following exchange:

8

Q:     As state president [of Local 3422], when you are working with management is it not true that you're wearing your AFSCME hat?

A:     I'm wearing my—I'm trying to help other people. I mean, it's not an 'AFSCME' thing, it's not—. You know, if you can settle it with the Department before it gets to be an issue, it's, you know—

Q:     As president [of AFSCME Local 3422], are you not furthering the agenda of AFSCME?

A:     I'm furthering the agenda of the corrections officers.

. . . .

Q:     You just testified that you're representing the correctional officers. You're representing them under the guise of AFSCME, though, correct?

A:     Yeah, I guess, yeah.

. . . .

Q:     When you go to management meetings or policy reviews, isn't it true you're on union time?

A:     Yes.

Q:     You're not on state time. You're not on regular work hour time, you're on union time, correct?

A:     Well, we're getting paid by the state, but they call it 'union time' for tracking purposes.

The Department relies heavily on both this testimony and that of Cruz and Perez, which summarily concluded that employee officials who are on "union time" are "conducting union business" and, thus, cannot be furthering official state business. However, the Department fails to cite any authority to support its argument that any activity that is administratively coded as "union time" is categorically not "in furtherance of official state business." *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where a party cites no authority to support an argument, the appellate courts may assume no such authority exists). Furthermore, the testimony and labels on which the Department relies fail to address the ultimate question in this case: whether Blair and Molina's attendance at the meeting and participation in the discussion regarding proposed policy changes advanced or facilitated the progress (i.e., was in furtherance) of the Department implementing its

9

proposed policy changes (official state business). It is to that question that we now turn.

**{21}** We begin by noting that the type of meeting for which state vehicle use was requested in this case was a policy review meeting that was held at a state facility, convened by management, and attended only by state employees. Cruz acknowledged that under the CBA, such meetings are required to be held when management proposes changes to policies affecting the Department's facilities in order to "allow the union the opportunity to comment on [the proposed changes]." Representatives of both management and the union are required to attend per the CBA. And because proposed changes affect the Department's facilities around the state—in Santa Fe, Las Cruces, Los Lunas, Springer, Grants, and Roswell—an employee official from each facility is required to attend and provide input. Importantly, until such time that the parties either agree to the proposed policy changes or bargain to impasse, the Department cannot implement the proposed changes. Additionally, Ortega testified that policy review meetings promote cooperative relationships between labor and management, that the parties "g[e]t a lot of stuff settled" at such meetings, and that the meetings enhance the orderly operation and good functioning of the Department's facilities. Thus, the record indicates that policy review meetings benefit the Department in that they, at the very least, allow the Department to comply with the requirements of the CBA in order to be able to implement proposed policy changes and, perhaps more significantly, promote the harmonious and cooperative relationship between employer and employees contemplated by the PEBA.

**{22}** Because a meeting between management and employee officials is a required step in the process of implementing operational changes at the Department's facilities, and because the Department cannot implement its proposed changes without first conferring with employee officials, it follows that employee officials who attend policy review meetings are integral in facilitating the progress of matters affecting and of principal concern to the State of New Mexico, i.e., they are acting in furtherance of official state business. Even assuming one of the outcomes of such meetings is that the parties agree to modify a proposed policy based on the input of employee officials and that the modification "benefits" the corrections officers that the employee officials are representing, that does not change the fact that the meeting has resulted in the furtherance of official state business. In essence, the Department's position is that any discussion with employee officials involving matters that may promote the union's "agenda" or that may result in a benefit to the union or its members can never be in furtherance of official state business. Such a position is simply at odds with Section 10-7E-2 of the PEBA, which expressly contemplates and encourages the promotion of "cooperative relationships between public employers and public employees," i.e., relationships wherein there exists the possibility—even the preference—of mutual benefits to both parties. We conclude that the PELRB's determination that Blair and Molina were acting in furtherance of official state business by attending the January 2009 policy review meeting is in accordance with law, supported by substantial evidence, and was not arbitrary, capricious, or an abuse of discretion. We further conclude that the PELRB's concomitant conclusion that the Department committed a prohibited practice in violation of Section 10-7E-19(A) is in accordance with law.

10

**CONCLUSION**

**{23}**   For the foregoing reasons, we affirm the district court's affirmance of the PELRB's order.

**{24}   IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**STEPHEN G. FRENCH, Judge**

11