# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>April 24, 2018</u>

**NO. A-1-CA-35204**

**STATE OF NEW MEXICO ex rel.**
**HECTOR BALDERAS, Attorney General,**

 Plaintiff-Appellee,

v.

**ITT EDUCATIONAL SERVICES, INC.,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Hector H. Balderas, Attorney General
Joseph Yar, Assistant Attorney General
Nicholas M. Sydow, Assistant Attorney General
P. Cholla Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Sutin, Thayer & Browne, A.P.C.
Stevan Douglas Looney
Albuquerque, NM

Bardacke Allison LLP
Paul G. Bardacke
Santa Fe, NM

Thompson Coburn LLP
William R. Bay
Jeffrey R. Fink
St. Louis, MO

for Appellant

Richard John Rubin, Assistant Attorney General
Santa Fe, NM

for Amici Curiae

**OPINION**

**VARGAS, Judge.**

{1}     In this consolidated appeal, ITT Educational Services, Inc., d/b/a ITT Technical Institute (ITT) appeals the district court's order denying its motion to compel arbitration, as well as its order compelling compliance with subpoenas served on counsel for ITT students by the Attorney General. On appeal, ITT claims that the Attorney General is bound by provisions in student enrollment agreements requiring that any dispute related to a student's enrollment be arbitrated and further requiring that any information related to the arbitration remain confidential. We conclude that under the specific circumstances of this case, enforcement of the agreement to arbitrate and accompanying confidentiality clause against the Attorney General is contrary to public policy and we affirm.

**BACKGROUND**

{2}     The State of New Mexico, through its Attorney General (State) filed suit against ITT, claiming violations of the New Mexico Unfair Practices Act (UPA) arising out of alleged misrepresentations to students about ITT's nursing program and its financial aid process. ITT filed a motion to compel arbitration, asking the district court to order the State to arbitrate individually for each student, "all claims seeking restitution or other relief on behalf of any ITT students in accordance with the

arbitration provision in the students' enrollment agreements with ITT[.]" ITT's enrollment agreement requires that "any dispute arising out of or in any way related" to the agreement, "including without limitation, any statutory, tort, contract or equity claim" be resolved by binding arbitration. ITT argued that, notwithstanding that the State was not a party to the enrollment agreement, it was required to arbitrate because its claims were derivative of student claims or alternatively, were brought in a representative capacity on behalf of students. Following a hearing, the district court denied ITT's motion to compel arbitration. ITT appealed the district court's denial pursuant to the New Mexico Uniform Arbitration Act, allowing for an appeal from an order denying a motion to compel arbitration. NMSA 1978, § 44-7A-29(a)(1) (2001).

{3} During discovery, the State served subpoenas duces tecum on two private attorneys (attorneys) who had each represented ITT students in prior arbitration proceedings against ITT conducted in accordance with the requirements of the enrollment agreements. The subpoenas served on the attorneys required that, for any proceeding against ITT in which they were counsel for an ITT student, they produce the following material:

> 1. All pleadings, decisions, or verdicts, filed, entered or issued in any arbitration proceeding involving [ITT] and ITT students in New Mexico;

2. All written discovery, including but not limited to, answers to interrogatories, and admissions and accompanying requests for admissions, produced or provided by [ITT] during arbitration between ITT and ITT students;

3. All testamentary evidence gathered or produced during arbitration proceedings between [ITT] and [ITT] students . . . including but not limited to, transcripts of depositions, transcripts of hearings or the contact information of any court reporter transcribing any hearings if the transcripts were not delivered or provided to you, affidavits, and written statements;

4. All documents produced or provided by [ITT];

5. All documents produced or provided by your clients[.]

ITT objected to the subpoenas pursuant to Rule 1-045(C) NMRA, asserting that disclosure of the requested materials would violate the confidentiality clauses of the enrollment agreements, requiring that "[a]ll aspects of the arbitration proceeding, and any ruling, decision or award by the arbitrator, will be strictly confidential." ITT instructed the attorneys to refrain from disclosing the materials listed in the subpoenas absent a court order.

{4} The State filed a motion to compel the production of the documents requested by the subpoenas, arguing that, as an investigative agency, it is entitled to discover information relating to the arbitration proceedings that could constitute impeachment or pattern or practice evidence, notwithstanding the confidentiality clause.

3

{5} ITT raised two objections to the release of the information. First, ITT asserted that allowing discovery of materials arising from the arbitration could lead to a violation of its students' right to privacy. Further, ITT claimed that the informal nature of arbitration rendered parties less guarded than those engaged in litigation, creating a public interest in keeping arbitration proceedings confidential. In considering ITT's concerns at the hearing on the State's motion to compel, the district court acknowledged the importance of student privacy, but noted, "I understand confidentiality agreements. I understand arbitration agreements between parties. . . . I don't have a problem with the concept of the confidentiality agreement, but I do have a problem with using it as a shield." When ITT was unable to provide authority supporting the district court's power to enforce a confidentiality clause to deprive an investigative or enforcement agency like the Attorney General of discovery that may be relevant to a claim brought pursuant to its statutory authority, the district court granted the State's motion to compel.

{6} The parties stipulated to the entry of a protective order, protecting information related to ITT's students and staff, trade secrets, and sensitive commercial, proprietary, or financial information. The order established extensive measures to safeguard the integrity and confidentiality of the information disclosed through discovery, requiring that all confidential materials be labeled and protected from

4

disclosure to anyone not intimately involved in the case. ITT obtained the district court's certification for an interlocutory appeal of its order compelling discovery and timely sought relief in this Court. Alternatively, ITT sought review through a writ of error.

{7}     This Court initially granted ITT's writ of error. A writ of error is the procedural vehicle used to invoke the collateral order doctrine in New Mexico. *See Carrillo v. Rostro*, 1992-NMSC-054, ¶ 25, 114 N.M. 607, 845 P.2d 130. The collateral order doctrine is generally disfavored, and as a result, courts have limited its application in an attempt to avert piecemeal appeals. *See Williams v. Rio Rancho Pub. Schs.*, 2008-NMCA-150, ¶ 7, 145 N.M. 214, 195 P.3d 879. Pretrial orders concerning discovery, particularly orders compelling discovery, are not collateral orders warranting review under a Rule 12-503 NMRA writ of error. *King v. Allstate Ins. Co.*, 2004-NMCA-031, ¶ 19, 135 N.M. 206, 86 P.3d 631. Because this matter is more properly raised by interlocutory appeal, we now quash the writ of error, grant ITT's application for interlocutory appeal, and affirm the district court.

**DISCUSSION**

**Standard of Review**

{8}     ITT's appeal requires us to consider the enforceability of the arbitration provision and accompanying confidentiality clause in its student enrollment

agreement with respect to the State's UPA claims. We review the interpretation of any relevant contract terms de novo. *Shah v. Devasthali*, 2016-NMCA-053, ¶ 10, 371 P.3d 1080. Further, "[w]hether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case," considering both statutory and judicial expressions of public policy. *Castillo v. Arrieta*, 2016-NMCA-040, ¶ 15, 368 P.3d 1249 (alteration, internal quotation marks, and citation omitted). Questions of law are also reviewed de novo. *See Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 12, 147 N.M. 157, 218 P.3d 75. Finally, "[w]e apply a de novo standard of review to a district court's denial of a motion to compel arbitration[,]" as well as to the applicability and construction of a contractual provision requiring arbitration. *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 4, 137 N.M. 57, 107 P.3d 11.

**Discovery**

{9}     ITT challenges the district court's order granting the State's motion to compel compliance with its subpoenas. Specifically, ITT argues that the Federal Arbitration Act (FAA) and public policy favoring arbitration require that the arbitration provision, including its confidentiality clause, be enforced to protect the subpoenaed materials from discovery, notwithstanding the State's statutory authority to investigate probable violations of the UPA and enforce its provisions. The State

argues that the district court's ruling was proper under our broad discovery rules and that it would be inappropriate to allow ITT to use the confidentiality clause to shield itself from the State's investigation. We emphasize that we are not being asked to consider whether the information that was the subject of the State's motion to compel is admissible, or in what way the State might be able to use the subpoenaed information, if at all. Our review is limited to whether the information requested in the State's subpoenas is discoverable under our Rules of Civil Procedure. We conclude that under the specific circumstances of this case, it is.

## A. Privileges and Confidentiality

{10}   Before we address the merits of the parties' arguments, we note that the parties have conflated the legally distinct concepts of confidentiality and privilege. "[F]or a privilege to exist in New Mexico, it must be recognized or required by the Constitution, the Rules of Evidence or other rules of this Court." *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 35, 283 P.3d 853 (internal quotation marks and citation omitted). Thus, information that is confidential is not necessarily protected by a legally recognized privilege. *See Lakeland Times v. Lakeland Union High Sch.*, 2014 WI App 110, ¶ 52, 357 Wis. 2d 722, 855 N.W.2d 904 (distinguishing confidentiality and privilege by defining privilege as "a legal right to refuse a valid subpoena for certain information" and confidentiality as a

method of "ensur[ing] that sensitive information is kept secret, a goal that may be reached with appropriate protective orders"); *see also Salerian v. Md. State Bd. of Physicians*, 932 A.2d 1225, 1242 (Md. Ct. Spec. App. 2007) (defining privilege as "legal protection given to certain communications and relationships" and acknowledging that because confidentiality is broader than privilege, information that is not protected by privilege can still be confidential information (internal quotation marks and citation omitted)); 81 Am. Jur. 2d *Witnesses* § 273 (2018) (" 'Confidentiality' and 'privilege' are not synonymous, and are two compatible, yet distinct, concepts[.]"). "Information can be confidential and, at the same time, nonprivileged." *Id.* This case does not implicate a constitutionally created or rule-based privilege, but rather contracted-for confidentiality.

**B.      ITT's Confidentiality Clause is Unenforceable as Against Public Policy in the Context of the State's UPA Claims**

{11}      ITT contends that the FAA and policy favoring arbitration mandate that we enforce the terms of the arbitration provision, including the confidentiality clause, to prevent the release of the information sought by the State. The State argues that it would be improper to allow ITT to use its confidentiality clause with students to shield itself from the State's statutorily mandated investigation and enforcement obligations, authorized by the UPA.

{12}     The Supreme Court of the United States has recognized that the purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks and citation omitted); *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 51, 304 P.3d 409 (acknowledging same); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 16, 150 N.M. 398, 259 P.3d 803 (acknowledging "the fundamental principle that arbitration is a matter of contract" (internal quotation marks and citation omitted)). "[T]he FAA preempts not only state laws that prohibit arbitration outright, but also state laws that stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Strausberg*, 2013-NMSC-032, ¶ 55 (quoting *Rivera*, 2011-NMSC-033, ¶ 17). It does not, however, "entirely displace state law governing contract formation and enforcement." *Strausberg*, 2013-NMSC-032, ¶ 52; *see Supak & Sons Mfg. Co. v. Pervel Indus., Inc.*, 593 F.2d 135 (stating that the FAA's purpose is "to make arbitration agreements as enforceable as other contracts, but not more so" (internal quotation marks and citation omitted)). As a result, arbitration provisions are subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rivera*, 2011-NMSC-033, ¶ 17 (internal quotation marks and citation omitted).

9

{13} In New Mexico, the enforceability of a contract balances an individual's freedom to enter into contracts with the public interest in restricting a person's ability to enter into a contract that is contrary to public policy. *See First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 12, 345 P.3d 310; *see also Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 20, 134 N.M. 341, 76 P.3d 1098 (recognizing New Mexico's "strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals" (internal quotation marks and citation omitted)); *Acacia Mut. Life Ins. Co. v. Am. Gen. Life Ins. Co.*, 1990-NMSC-107, ¶ 1, 111 N.M. 106, 802 P.2d 11 ("The right to contract is jealously guarded by [the C]ourt, but if a contractual clause clearly contravenes a positive rule of law, it cannot be enforced[.]"). "Public policy favoring the invalidation of a [contract] can be furnished either through statutory or common law." *Berlangieri*, 2003-NMSC-024, ¶ 38.

{14} We have recognized public policy violations where the terms of a contract have been contrary to statutory provisions. *See First Baptist Church of Roswell*, 2015-NMSC-004, ¶ 15 (holding that contract waiving statutorily required interest on oil and gas proceeds payments was unenforceable as against public policy); *Berlangieri*, 2003-NMSC-024, ¶ 53 (concluding that contract for liability release was contrary to the public policy established by the Equine Liability Act and therefore

10

unenforceable): *Acacia Mut. Life Ins. Co.*, 1990-NMSC-107, ¶ 11 (stating that a partnership agreement requiring indemnification of general partners by limited partner contravenes the Uniform Limited Partnership Act and is therefore unenforceable as against public policy); *DiGesu v. Weingardt*, 1978-NMSC-017, ¶ 7, 91 N.M. 441, 575 P.2d 950 (finding a contract for a partial lease of a liquor license to violate public policy where partial leasing was prohibited by applicable regulations and statute expressly limited the number of liquor licenses to be issued by the state). "Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case." *Berlangieri v. Running Elk Corp.*, 2002-NMCA-060, ¶ 11, 132 N.M. 332, 48 P.3d 70 (internal quotation marks and citations omitted).

{15} In this case, the question is whether enforcement of a confidentiality clause in a contract between parties violates public policy expressed by the Legislature in the UPA, where the confidentiality clause would prevent the State's efforts to investigate and enforce the UPA against one of the parties to the contract. "Every statute is a manifestation of some public policy." *First Baptist Church of Roswell*, 2015-NMSC-004, ¶ 12. In interpreting the UPA, "our primary goal is to give effect to the Legislature's intent." *Berlangieri*, 2003-NMSC-024, ¶ 42. "The starting point in statutory construction is to read and examine the text of the act and draw inferences

11

concerning the meaning from its composition and structure." *Meridian Oil, Inc. v. N.M. Taxation & Revenue Dep't*, 1996-NMCA-079, ¶ 12, 122 N.M. 131, 921 P.2d 327 (internal quotation marks and citation omitted).

{16} The UPA represents New Mexico's public policy in favor of preventing consumer harm and resolving consumer claims. *See Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶ 9, 144 N.M. 464, 188 P.3d 1215. In furtherance of that policy, the State has been given broad statutory authority to investigate violations and enforce the provisions of the UPA. *Id.* ¶ 11 (identifying Consumer Protection Division of the Attorney General's Office and its duty to "investigate suspicious business activities, informally resolve the complaints of dissatisfied consumers, educate citizens about their consumer rights, and file lawsuits on behalf of the public" as an example of "New Mexico's fundamental public policy in ensuring that consumers have an opportunity to redress their harm"). Under the UPA, the State is responsible for enforcement of the Act. NMSA 1978, § 57-12-15 (1967). To that end, the Legislature has authorized the State, without the need to file a lawsuit, to serve an investigative demand for the production of documents on any person who might be in possession, custody or control of documents "relevant to the subject matter of an investigation of a probable violation of the [UPA.]" NMSA 1978, § 57-12-12(A) (1967) (allowing the state to request documentary evidence, including "any book,

record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription or other tangible document or recording). While an investigative demand cannot be made for privileged matters, or matters which would not be required to be produced by a subpoena duces tecum, *see* § 57-12-12(C)(2), the Legislature's authorization of such demands without litigation signals its intent to sanction the State's broad authority to investigate violations of the UPA. Finally, the UPA allows the State to bring actions in its name, alleging violations of the UPA, if such "proceedings would be in the public interest[.]" NMSA 1978, § 57-12-8 (1977). Taking all of these things into account, including the fact that the information requested by the State does not implicate any privilege, we conclude that, under the circumstances of this case, it would be contrary to public policy to allow ITT to use the confidentiality clause with its students to shield itself from the State's investigation and litigation authorized under the UPA. We also note that the district court entered a stipulated protective order to prevent any unwarranted disclosure of the confidential information produced in response to the State's subpoenas. Consequently, the district court properly declined to enforce the confidentiality clause and granted the State's motion to compel the production of the subpoenaed information.

**Arbitration**

{17}   ITT also appeals the district court's denial of its motion to compel arbitration, arguing that the State is bound by the enrollment agreement between ITT and its students because any claims the State has are brought in its derivative or representative capacity. We find no error on the part of the district court as ITT's appeal of the order denying its motion to compel arbitration fails for the same reason as its appeal of the district court's discovery order. The State's broad authority to enforce the provisions of the UPA includes the statutory right to bring actions in its name, alleging violations of the UPA, if such "proceedings would be in the public interest[.]" Section 57-12-8(A). To compel the State to arbitrate actions for which the Legislature has granted it specific statutory authority "clearly contravenes a positive rule of law, [and] it cannot be enforced" under such circumstances. *Acacia Mut. Life Ins. Co.*, 1990-NMSC-107, ¶ 1. In light of our holding, we need not reach ITT's argument that the State's claims were derivative or representative, making it subject to the arbitration provision. The district court properly denied ITT's motion to compel arbitration.

{18}   In reaching our decision, we stress that our ruling in this case is based on the specific powers granted by the Legislature to the State under the UPA. We neither consider nor decide the propriety of a defendant's use of an arbitration provision to

14

compel arbitration or a confidentiality clause to prevent the disclosure of information sought in a private suit brought under NMSA 1978, Section 57-12-10 (2005) of the UPA.

**CONCLUSION**

{19}  For the reasons set out herein, we affirm the decision of the district court.

{20}  **IT IS SO ORDERED.**

 

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

 

_____

**MICHAEL E. VIGIL, Judge**

 

_____

**J. MILES HANISEE, Judge**